UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ROYAL PALM SENIOR INVESTORS, LLC and GUY T. MITCHELL,

                        Plaintiffs,

            -against-

CARBON CAPITAL II, INC.,

                        Defendant.

08 Civ. 4319

**FIRST AMENDED COMPLAINT**

RECEIVED
MAY 13 2008
U.S.D.C. S.D. N.Y.
CASHIERS

---

Plaintiffs Royal Palm Senior Investors, LLC ("Royal Palm") and Guy T. Mitchell ("Mitchell"), by and through their attorneys, Arnold & Porter LLP, as for their First Amended Complaint against defendant Carbon Capital II, Inc. ("Carbon Capital") allege as follows:

## NATURE OF THE ACTION

1. This is an action for declaratory judgment and injunctive relief to prevent Carbon Capital from interfering with plaintiffs' right and ability to manage and market for sale the Royal Palm Hotel, located in Miami Beach, Florida by alleging that Royal Palm has defaulted under the parties' October 24, 2007 Settlement Agreement (the "Settlement Agreement").

## THE PARTIES

2. Plaintiff Royal Palm is a limited liability company organized and existing under the laws of the State of Delaware, having its principal place of business in the State of Florida. The members of Royal Palm are citizens and residents of the States of Delaware, Michigan, Florida, Illinois and Ohio.

3. Plaintiff Guy T. Mitchell is a citizen and resident of Florida.

4.      On information and belief, defendant Carbon Capital is a corporation duly organized and existing under the laws of the State of Maryland, having its principal place of business at 40 East 52nd Street, New York, New York 10022.

## THE AMOUNT IN CONTROVERSY

5.      The amount in controversy between plaintiffs and Carbon Capital exceeds the sum or value of Seventy-five Thousand and No/100 Dollars ($75,000), exclusive of interest and costs.

## JURISDICTION AND VENUE

6.      The United States District Court for the Southern District of New York has jurisdiction over this matter based on diversity of citizenship pursuant to 28 U.S.C. § 1332 and 28 U.S.C. § 1441 (a), (b) and (c).

7.      Venue is proper in this District because Carbon Capital, by agreement, irrevocably consented to venue in any federal, state, county or municipal court sitting in the State of New York with respect to any action brought by plaintiffs concerning the subject matter of this lawsuit, and because Carbon Capital resides in this District.

## FACTS

8.      On or about February 18, 2005, Royal Palm executed a promissory note (the "Note") made payable to the order of Carbon Capital.

9.      Also on or about February 18, 2005, Royal Palm and Carbon Capital entered into a loan agreement (the "Loan Agreement").

10.     Also on or about February 18, 2005, in connection with the Loan Agreement, Mitchell executed a Guaranty Agreement (the "Guaranty Agreement") with respect to the loan made pursuant to the Loan Agreement.

11. Under the terms of the Guaranty Agreement, Mitchell guaranteed payment of the Guaranteed Obligations (as that term is defined in the Loan Agreement), and Mitchell is liable therefor as a primary obligor. In the event that Royal Palm were to default under the Loan Agreement, Mitchell would be liable to Carbon Capital for the entire amount of the Guaranteed Obligations. Further, under the terms of the Guaranty Agreement, Mitchell becomes liable for payment of the Guaranteed Obligations once Royal Palm fails to pay them, and Carbon Capital has no duty to seek payment of the Guaranteed Obligations from any party in advance of holding Mitchell liable therefor.

12. On or about October 24, 2007, Carbon Capital, Royal Palm, Mitchell and certain other guarantors entered into the Settlement Agreement.

13. As part of the Settlement Agreement, the parties each made promises to the other. Carbon Capital, *inter alia*, covenanted to make the mortgage payments on behalf of the Royal Palm Hotel for the months of October 2007, November 2007, December 200 and January 2008. For its part, Royal Palm agreed, *inter alia*, by March 31, 2008 either to pay to Carbon Capital the amount set forth in the Settlement Agreement, or to cause the sale of the Royal Palm Hotel, or refinance the Note.

14. Also on or about October 24, 2007, Mitchell, as Royal Palm's guarantor with respect to the Settlement Agreement, executed a Reaffirmation of his February 18, 2005 Guaranty Agreement (the "Reaffirmation of Guaranty"). The Reaffirmation of Guaranty applied the terms of the Guaranty Agreement to the Settlement Agreement, and Mitchell agreed that the Guaranteed Obligations includes full repayment of the loan made to Royal Palm.

15. In the fall of 2007, Hyatt Corporation and Hyatt Equities, L.L.C. (collectively, "Hyatt") expressed an interest in purchasing the Royal Palm Hotel. On or about November 15,

2007, Royal Palm and Hyatt executed a Letter of Intent and on or about December 17, 2007 executed a Purchase and Sale Agreement (the "Purchase and Sale Agreement").

16. Under the terms of the Purchase and Sale Agreement, on December 19, 2007, Hyatt deposited $6 million of the confidential total purchase price as "earnest money" into escrow. Hyatt had until January 28, 2008 to complete its due diligence and decide whether to terminate the transaction and recover its earnest money. Even though control of the Royal Palm Hotel was to pass to Hyatt only at the agreed-upon February 1, 2008 closing date, Hyatt was nevertheless entitled to establish shadow management at the hotel prior to that date. Hyatt assembled its shadow management, and it took residence in the Royal Palm Hotel in late January 2008 and began to assume effective control over its operations.

17. Beginning on January 24, 2008, Hyatt began a series of requests for delayed closing dates, first a few days, then a few weeks, and finally until April 1, 2008, one day after the Settlement Agreement's March 31, 2008 deadline to sell the Royal Palm Hotel. Royal Palm had no choice but to refuse Hyatt's final request for an April 1 closing date.

18. On January 28, 2008, Hyatt terminated the Purchase and Sale Agreement, and its shadow management immediately and abruptly departed the hotel.

19. Hyatt provided conflicting reasons for its requests for an extension of the closing date.

20. Hyatt's termination of the Purchase and Sale Agreement was highly suspicious. After Hyatt did so, David Tarr, Hyatt's Senior Vice President of Real Estate and Development, North America Division - Eastern Region who negotiated the Purchase and Sale Agreement on behalf of Hyatt, called Mitchell and was extremely apologetic. He stated that he was uncomfortable with Hyatt's actions, saying "again, I am very sorry to be acting in this manner --

I am more troubled by it than you can imagine," and "all I can do is assure you that these decisions are not being driven by me."

21. On information and belief, Carbon Capital either directly or indirectly informed Hyatt of the confidential terms of the Settlement Agreement or otherwise interfered with the completion of the sale to Hyatt.

22. On or about March 25, 2008, counsel to Carbon Capital informed Royal Palm by letter that Royal Palm had purportedly failed to comply with the terms and conditions of the Settlement Agreement. Specifically, Carbon Capital claimed that Royal Palm had defaulted on its obligations under Sections 6.3.2, 8, 6.3.3 and 7.1 of the Settlement Agreement to (1) enter into a new cash management agreement with Wachovia Bank, (2) terminate and replace the existing Royal Palm Hotel's management team and (3) obtain certain opinions of counsel.

23. By the explicit terms of the Settlement Agreement, Carbon Capital waived Royal Palm's obligation to comply with Sections 6.3.2 and 6.3.3.

24. Moreover, beginning in late October 2007, Carbon Capital began to work with the Royal Palm Hotel's management to aggressively monitor the hotel's overall financial performance, as well as its bookings, rates, cash flow, liens, accounts payable, profits and losses, balance sheet, and sales and marketing activity. By this course of conduct, Carbon Capital waived Royal Palm's obligation to comply with the terms of Sections 7.1 and 8 of the Settlement Agreement.

25. On or about April 1, 2008, counsel to Carbon Capital informed Royal Palm by letter that Royal Palm had purportedly failed to comply with other terms and conditions of the Settlement Agreement. Specifically, Carbon Capital claimed that Royal Palm had defaulted by, prior to March 31, 2008, failing to either pay the amount set forth in the Settlement Agreement, or to cause the sale of the Royal Palm Hotel, or refinance the Loan.

26. By directly or indirectly interfering with Royal Palm's sale of the Royal Palm Hotel to Hyatt, Carbon Capital breached its duty of good faith and fair dealing with Royal Palm and was not entitled to claim that Royal Palm had defaulted by failing to sell the hotel.

27. Carbon Capital contends that, by virtue of Royal Palm's alleged default under the Settlement Agreement, it is now the managing member of the Royal Palm Hotel, and that 99.9% of Royal Palm's membership interest in the Royal Palm Hotel had been automatically conveyed to Carbon Capital.

28. Royal Palm has not defaulted under the Settlement Agreement. Rather, it was Carbon Capital that waived Royal Palm's obligation to comply with the terms of Sections 6.3.2, 8, 6.3.3 and 7.1 of the Settlement Agreement. Likewise, it was Carbon Capital that failed to make the mortgage payments on behalf of the Royal Palm Hotel as required by the Settlement Agreement. And, on information and belief, it was Carbon Capital that either directly or indirectly interfered with Royal Palm's ability to sell the Royal Palm Hotel on or before March 31, 2008.

29. On April 3, 2008, Carbon Capital brought an action against plaintiffs in the Commercial Division of New York State Supreme Court, seeking declaratory and injunctive relief ("Carbon Capital's Action"). In that action, Carbon Capital alleged that Royal Palm and Mitchell had violated the Settlement Agreement, principally by failing to complete the sale of the Royal Palm Hotel by March 31, 2008. Carbon Capital, claiming immanent harm, sought a temporary restraining order and an injunction giving it control over the Royal Palm Hotel.

30. On April 16, 2008, Royal Palm and Mitchell removed Carbon Capital's Action to the United States District Court for the Southern District of New York.

31. On April 17, 2008, that Court denied Carbon Capital's motion for a temporary restraining order transferring control of the Royal Palm Hotel to Carbon Capital. The Court

scheduled an evidentiary hearing for May 1, 2008 on Carbon Capital's motion for a preliminary injunction seeking the same relief.

32. The parties negotiated a stipulated stand-still order and a confidentiality order, and undertook expedited discovery.

33. On April 30, 2008, at Carbon Capital's request, the parties appeared before the Court, at which time the evidentiary hearing was postponed until May 13, 2008.

34. On May 7, Carbon Capital dismissed its own action without prejudice.

35. After encountering no success in its own Action, Carbon Capital attempted to avail itself of the inconsistent remedy of a UCC foreclosure sale.

36. On April 18, 2008, after the Court refused to issue an order transferring control of the Royal Palm Hotel to Carbon Capital, Carbon Capital issued a UCC Foreclosure Notice, contemplating a sale at 11:00 am on May 5, 2008.

37. Following the April 30 court conference, Carbon Capital agreed to delay its foreclosure sale until after the evidentiary hearing on its injunction.

38. On May 1, 2008, Carbon Capital amended its UCC Foreclosure Notice for a sale on May 21, 2008.

39. Under the Settlement Agreement, if control of the Royal Palm Hotel is transferred from Royal Palm to Carbon Capital, the proceeds of any sale of the hotel in excess of the hotel's mortgage and the amount due on the Note are due to Royal Palm.

40. A foreclosure sale would necessarily impair the sale value of the Royal Palm Hotel, thus reducing or eliminating Royal Palm's return of equity and potentially give rise to a deficiency with respect to repayment of the loan to Carbon Capital.

41. Since dismissing the Carbon Capital Action, Carbon Capital has not withdrawn its Foreclosure Notice and has publicly advertised the sale.

42. Carbon Capital has no right to foreclosure under the Settlement Agreement.

43. Under the terms of the Guaranty Agreement and the Reaffirmation of Guaranty, in the event of a default by Royal Palm under the Settlement Agreement, Carbon Capital may assert that, as a primary obligor, Mitchell is immediately liable to Carbon Capital for the entire amount of the Guaranteed Obligations.

## FIRST CLAIM FOR RELIEF

44. Plaintiffs repeat and reallege paragraphs 1 through 43 of this Complaint as if fully set forth herein.

45. Royal Palm is not in default under the Settlement Agreement.

46. Carbon Capital has waived Royal Palm's obligation to comply with certain terms of the Settlement Agreement.

47. Carbon Capital has materially breached its obligations under the Settlement Agreement.

48. Carbon Capital has interfered with Royal Palm's ability to satisfy its obligations under the Settlement Agreement.

49. Carbon Capital has wrongly declared Royal Palm in default under the Settlement Agreement and has issued a Notice of Foreclosure.

50. An actual, ripe, justiciable controversy exists between plaintiffs and Carbon Capital as to their respective rights and obligations under the Settlement Agreement, and this Court is empowered to grant relief under 28 U.S.C. § 2201.

51. Plaintiffs are entitled to a declaratory judgment that: (i) Royal Palm is not in default under the Settlement Agreement; (ii) Carbon Capital is not entitled to exercise any remedies under the Settlement Agreement against Royal Palm, including foreclosure; and (iii)

Royal Palm is entitled to a reasonable period of time to satisfy its obligations under the Settlement Agreement.

## SECOND CLAIM FOR RELIEF

52. Plaintiffs repeat and reallege paragraphs 1 through 51 of this Complaint as if fully set forth herein.

53. Plaintiffs will be irreparably injured in the event that Carbon Capital exercises any of its remedies under the Settlement Agreement, including the remedy of foreclosure.

54. Plaintiffs have no adequate remedy at law.

55. Plaintiffs are entitled to preliminary and permanent injunctive relief barring Carbon Capital from exercising any remedies under the Settlement Agreement.

## THIRD CLAIM FOR RELIEF

56. Plaintiffs repeat and reallege paragraphs 1 through 55 of this Complaint as if fully set forth herein.

57. In the event of a default by Royal Palm under the Settlement Agreement, Carbon Capital will be able to assert a claim against Mitchell under the Guaranty Agreement and the Reaffirmation of Guaranty for the entire amount of the Guaranteed Obligations as a primary obligor.

58. Carbon Capital is not entitled assert a claim against Mitchell under the Guaranty Agreement or the Reaffirmation of Guaranty.

59. An actual, ripe, justiciable controversy exists between Plaintiffs and Carbon Capital as to Mitchell's liability under the Guaranty Agreement and Reaffirmation of Guaranty with respect to the Loan Agreement and Settlement Agreement, and this Court is empowered to grant relief under 28 U.S.C. § 2201.

60. Plaintiffs are entitled to a declaratory judgment that Mitchell has no liability to Carbon Capital under either the Guaranty Agreement or Reaffirmation of Guaranty.

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiffs Royal Palm and Mitchell demand judgment against defendant Carbon Capital:

(a) On their First Claim for Relief, an order adjudging, declaring, and decreeing that: (i) Royal Palm is not in default under the Settlement Agreement; (ii) Carbon Capital is not entitled to exercise any remedies under the Settlement Agreement against Royal Palm, including foreclosure; and (iii) Royal Palm is entitled to a reasonable period of time to satisfy its obligations under the Settlement Agreement;

(b) On its Second Claim for Relief, preliminary and permanent enjoining Carbon Capital from exercising any remedies under the Settlement Agreement;

(c) On their Third Claim for Relief, an order adjudging, declaring, and decreeing that Mitchell has no liability to Carbon Capital under either the Guaranty Agreement or Reaffirmation of Guaranty;

(d) An award of all costs and disbursements, including actual attorneys' fees, that Plaintiffs incur in this action; and

(e)   Granting such other and further relief as the Court deems just and proper.

Dated: New York, New York
       May 12, 2008

ARNOLD & PORTER LLP

By: _____
H. Peter Haveles, Jr.
Jonathan N. Francis
399 Park Avenue
New York, NY  10022
(212) 715-1000
Peter_Haveles@aporter.com

Attorneys for Plaintiffs