UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
GUY T. MITCHELL,                                    :
                                                    :
                         Plaintiff,                 :        Index No. 08 Civ. 4319 (JES)
                                                    :
            - against -                             :
                                                    :
                                                    :
CARBON CAPITAL II, INC.,                            :
                                                    :
                         Defendant.                 :
                                                    :
                                                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## ANSWER AND COUNTERCLAIM

Defendant Carbon Capital II, Inc. (Carbon II), by its attorneys, answers the First

Amended Complaint, dated May 12, 2008 (the "Amended Complaint"), and asserts a

Counterclaim as follows:

     1.     Admit that plaintiff seeks the relief enumerated in paragraph 1 but deny that

plaintiff is entitled to such relief.

     2.     Deny knowledge or information sufficient to form a belief as to the truth of

paragraph 2.

     3.     Deny knowledge or information sufficient to form a belief as to the truth of

paragraph 3.

     4.     Admit paragraph 4.

     5.     Admit paragraph 5.

     6.     Neither admit nor deny paragraph 6 on the ground that the allegations therein set

forth legal conclusions to which no responsive pleading is required.

     7.     Neither admit nor deny paragraph 7 on the ground that the allegations therein set

forth legal conclusions to which no responsive pleading is required.

8.    Admit paragraph 8.

9.    Admit paragraph 9.

10.    Admit paragraph 10.

11.    Deny paragraph 11 and refer to the Guaranty Agreement for the complete and accurate terms thereof.

12.    Admit paragraph 12.

13.    Deny paragraph 13 and refer to the Settlement Agreement for the complete and accurate terms thereof.

14.    Deny paragraph 14 and refer to the Reaffirmation of Guaranty for the complete and accurate terms thereof, except admit that Mitchell executed the Reaffirmation of Guaranty.

15.    Deny knowledge or information sufficient to form a belief as to the truth of paragraph 15.

16.    Deny knowledge or information sufficient to form a belief as to the truth of paragraph 16.

17.    Deny knowledge or information sufficient to form a belief as to the truth of paragraph 17.

18.    Deny knowledge or information sufficient to form a belief as to the truth of paragraph 18.

19.    Deny knowledge or information sufficient to form a belief as to the truth of paragraph 19.

20.    Deny knowledge or information sufficient to form a belief as to the truth of paragraph 20.

21.    Deny paragraph 21.

22.    Deny paragraph 22 and refer to the March 25, 2008 letter for the complete and

accurate terms thereof.

23.    Deny paragraph 23.

24.    Deny paragraph 24.

25.    Deny paragraph 25 and refer to the April 1, 2008 letter for the complete and accurate terms thereof.

26.    Deny paragraph 26.

27.    Admit paragraph 27.

28.    Deny paragraph 28.

29.    Deny paragraph 29 and refer to the pleadings filed in the Commercial Division of New York State Supreme Court for the complete and accurate description thereof.

30.    Admit paragraph 30.

31.    Deny paragraph 31, except admit that the Court scheduled an evidentiary hearing for May 1, 2008.

32.    Admit paragraph 32.

33.    Admit paragraph 33.

34.    Admit paragraph 34.

35.    Deny paragraph 35.

36.    Deny paragraph 36, except admit that Carbon issued a UCC Foreclosure Notice, contemplating a sale at 11:00 a.m. on May 5, 2008.

37.    Deny paragraph 37, except admit that Carbon agreed to schedule a UCC foreclosure sale after May 13, 2008.

38.    Admit.

39.    Deny paragraph 39 and refer to the Settlement Agreement for the complete and accurate terms thereof.

40.    Deny paragraph 40.

41.    Deny paragraph 41.

42.    Deny paragraph 42.

43.    Deny paragraph 43 and refer to the terms of the Guaranty Agreement and Reaffirmation of Guaranty for the complete and accurate terms thereof.

44.    Repeat and reallege the responses to paragraphs 1 through 43 of the Amended Complaint as set forth above.

45.    Deny paragraph 45.

46.    Deny paragraph 46.

47.    Deny paragraph 47.

48.    Deny paragraph 48.

49.    Deny paragraph 49, except admit that Carbon has issued a notice of foreclosure.

50.    Neither admit nor deny paragraph 50 on the ground that the allegations therein set forth legal conclusions to which no responsive pleading is required.

51.    Deny paragraph 51.

52.    Repeat and reallege the responses to paragraphs 1 through 51 of the Amended Complaint as set forth above.

53.    Deny paragraph 53.

54.    Deny paragraph 54.

55.    Deny paragraph 55.

56.    Repeat and reallege the responses to paragraphs 1 through 55 of the Amended Complaint as set forth above.

57.    Deny paragraph 57 and refer to the Settlement Agreement, the Guaranty Agreement and the Reaffirmation of Guaranty for the complete and accurate terms thereof.

58.    Deny paragraph 58 and refer to the Guaranty Agreement and the Reaffirmation of Guaranty for the complete and accurate terms thereof.

59.    Neither admit nor deny paragraph 59 on the ground that the allegations therein set forth legal conclusions to which no responsive pleading is required.

60.    Deny paragraph 60.

61.    Deny that plaintiffs are entitled to any of the relief sought.

AFFIRMATIVE DEFENSES

1.    The Amended Complaint fails to state a claim upon which relief can be granted.

2.    Plaintiff's claims are barred, in whole or in part, by the doctrines of waiver, ratification, laches, and/or estoppel.

3.    Plaintiff's claims are barred, in whole or in part, by the doctrine of unclean hands.

4.    Any and all of defendant's actions challenged by plaintiffs were lawful, justified, and carried out in good faith.

5.    Plaintiff's claims are barred, in whole or in part, because he does not have standing to assert his claims.

6.    Plaintiff's claims are barred, in whole or in part, because there has been no injury in fact attributable to any conduct by defendant.

7.    Plaintiff's claims are barred, in whole or in part, because he is not the real party in interest.

8.    Plaintiff's claims are barred, in whole or in part, because his claimed injuries and damages were not legally or proximately caused by any acts or omissions of defendant and/or were caused, if at all, by the conduct of third parties, including, without limitation, the prior, intervening, or supervening conduct of such third parties.

9.    Plaintiff is not entitled to, and fail to state a claim for costs and disbursements,

including any attorneys' fees.

10.    Defendant reserves the right to supplement these defenses as discovery progresses.

## COUNTERCLAIM

Defendant Carbon Capital II, Inc. ("Carbon II"), by and through its attorneys, Sidley Austin LLP, as for its Counterclaim against Guy T. Mitchell ("Mitchell"), alleges as follows:

### Nature of the Action

1.    This is a counterclaim for (i) declaratory judgment to prevent Mitchell from continuing to violate Carbon II's contractual rights under a settlement agreement, dated October 24, 2007 ("Settlement Agreement"), as sole managing member of the Royal Palm Hotel, located in Miami Beach, Florida, by holding Royal Palm Senior Investors, LLC ("Royal Palm") out as the managing member of the Royal Palm Hotel; (ii) breach of contract arising out of the flagrant and wanton breach by Mitchell as a guarantor under a Guaranty Agreement, dated as of February 18, 2005, in favor of Carbon II ("Guaranty"); and (iii) attorneys' fees incurred by Carbon II in enforcing its rights under the Settlement Agreement and Guaranty.

2.    Pursuant to the Settlement Agreement, Royal Palm was removed as managing member of the Royal Palm Hotel as of March 31, 2008, and 100% of Royal Palm's interest in the Royal Palm Hotel was conveyed to Carbon II.

3.    Nonetheless, in violation of the Settlement Agreement, Mitchell refuses to deliver to Carbon II documentation reasonably requested by Carbon II to evidence both the removal of Royal Palm as the managing member, as well as the conveyance to Carbon II of Royal Palm's membership interest in the Royal Palm Hotel.  Moreover, Mitchell continues to hold Royal Palm out as the managing member of the hotel, and Royal Palm, through Mitchell, is, in fact, continuing to act as the managing member of the hotel in violation of the Settlement Agreement.

Mitchell's actions unquestionably violate the rights of Carbon II, and are interfering with Carbon II's efforts to prepare the Royal Palm Hotel for sale. If a declaratory judgment is not entered that prevents Mitchell from holding Royal Palm out as the managing member of the Royal Palm Hotel, Mitchell will continue to violate Carbon II's rights and will interfere with the sale process.

4. In addition, to date, and in clear violation of the Guaranty, Mitchell has refused to pay $37,261,842.63, plus additional interest, costs and expenses accruing since October 24, 2007, due and owing to Carbon II.

## The Parties

5.      Defendant Carbon Capital II, Inc. is a corporation duly organized and existing under the laws of the State of Maryland, having its principal place of business at 40 East 52nd Street, New York, New York 10022. Carbon Capital II, Inc. acts as a fiduciary for its investors who, in turn, make or lose money based on its real estate management activities, including its management of the Royal Palm Hotel.

6.      Upon information and belief, plaintiff Guy T. Mitchell is an individual residing in Florida.

7.      Upon information and belief, Guy T. Mitchell is the sole manager of, and controls, Royal Palm.

## Facts

8.      From time to time, Carbon II loans money to entities to acquire, develop, redevelop and sell property.

9.      On or about February 18, 2005, Royal Palm executed a promissory note (the "Note") made payable to the order of Carbon II. In connection with the Note, Royal Palm and Carbon II executed a loan agreement, dated as of February 18, 2005 (the "Loan Agreement").

10.      The Note evidences a mezzanine loan in the initial principal amount of

$24,545,813.00 (the "Loan") made by Carbon II to Royal Palm, and obligates Royal Palm to repay the entire principal amount, plus contractually agreed upon interest, costs, and expenses, on the maturity date, which was March 9, 2007.

11.    The purpose of the Loan was to, among other things, further develop for sale the Royal Palm Hotel, located in Miami Beach, Florida.

12.    Pursuant to the Note and Loan Agreement, Royal Palm agreed to pay the entire principal amount of the loan on March 9, 2007, and to make interest payments at the applicable interest rate, beginning on February 18, 2005.

13.    In connection with the Note and Loan Agreement, Mitchell executed the Guaranty, dated as of February 18, 2005, along with two other individuals, by which Mitchell personally guaranteed full payment to Carbon II of all obligations of Royal Palm under the terms of the Note and Loan Agreement.

14.    The Guaranty provides that "Guarantor agrees to the provisions of the Loan Documents."

15.    The Guaranty also provides that the "Guarantor hereby irrevocably and unconditionally covenants and agrees that it is liable for the Guaranteed Obligations as a primary obligor," with Guaranteed Obligations being defined in the Loan Agreement as, inter alia, Royal Palm's obligation to "perform and observe the obligations" contained in the Note and Loan Agreement.

16.    The Guaranty further provides that the Guarantors:

waive[] any rights which Guarantor may have to require Lender[], in order to enforce the obligations of Guarantor hereunder, first to (a) institute suit or exhaust its remedies against Borrower or others liable on the Loan or the Guaranteed Obligations or any other person, (b) enforce Lender's rights against any collateral which shall ever have been given to secure the Loan, (c) enforce Lender's rights against any other guarantors of the Guaranteed Obligations, (d) join Borrower or any others liable on the Guaranteed Obligations in any action seeking to enforce this Guaranty, (e) exhaust any remedies available to Lender against any collateral

which shall ever have been given to secure the Loan, or (f) resort to any other means of obtaining payment of the Guaranteed Obligations. Lender shall not be required to mitigate damages or take any other action to reduce, collect or enforce the Guaranteed Obligations.

17.    Article II of the Guaranty provides that Guarantors' obligations "shall not be released, diminished, impaired, reduced or adversely affected by any of the following, and waives any common law, equitable, statutory or other rights (including without limitation rights to notice) which Guarantor might otherwise have as a result of or in connection with any of the following":

> **Section 2.1. Modifications.** Any renewal, extension, increase, modification, alteration or rearrangement of all or any part of the Guaranteed Obligations, the Note, the Loan Agreement, the other Loan Documents, or any other document, instrument, contract or understanding between Borrower and Lender, or any other parties, pertaining to the Guaranteed Obligations or any failure of Lender to notify Guarantor of any such action.

> **Section 2.2. Adjustment.** Any adjustment, indulgence, forbearance or compromise that might be granted or given by Lender to Borrower or any Guarantor.

18.    The Guaranty further provides that "[i]n the event that Guarantor should breach or fail to timely perform any provisions of this Guaranty, Guarantor shall, immediately upon written demand by Lender, pay Lender all costs and expenses (including court costs and attorneys' fees) incurred by Lender in the enforcement hereof or the preservation of Lender's rights hereunder."

## Royal Palm Defaults Under The Loan Agreement

19.    On March 9, 2007, Royal Palm failed to pay the full amount of the Loan, including contractually agreed upon interest and expenses, and therefore, an event of default occurred under the Note and Loan Agreement.

20.    The Loan Agreement defines an event of default as occurring if, among other things, "any portion of the Debt is not paid when due," with "Debt" being defined as the

outstanding principal amount, interest and fees due to Carbon II in respect of the Loan under the Note and the Loan Agreement.

### The Settlement Agreement

21.    From at least March 9, 2007 through October 24, 2007, Carbon II and Royal Palm discussed various forbearance and settlement proposals.

22.    On June 11, 2007, counsel to Carbon II sent to Guarantors a letter demanding payment of all obligations due under the Settlement Agreement.

23.    On or about October 24, 2007, Carbon II, Royal Palm, and certain guarantors, including Mitchell entered into the Settlement Agreement.

24.    Mitchell signed the Settlement Agreement as a guarantor and on behalf of Royal Palm.

25.    As part of the Settlement Agreement, Mitchell and Royal Palm agreed that Royal Palm had "defaulted in its obligation to timely repay the indebtedness under the Loan Agreement on [March 9, 2007], among other Events of Default, and [Royal Palm] has requested [Carbon II] to forbear from the exercise of certain remedies in respect of the Loan."

26.    Under the Settlement Agreement, which required a reaffirmation of the Guaranty by Mitchell, Royal Palm and Mitchell "expressly waive[d] any set off, defenses, including usury, and counterclaims in law or equity to the validity of the Debt or other obligations to [Carbon II] under this Agreement and/or the Loan Documents."

27.    As set forth in the Settlement Agreement, Royal Palm also agreed, inter alia, that an amount of $37,261,842.63 was due and owing to Carbon II under the Note and Loan Agreement, and that interest, costs and expenses, as set forth in the Settlement Agreement, would continue to accrue.

28.    As part of the Settlement Agreement, Royal Palm requested that Carbon II forbear

from the exercise of certain remedies in respect of the Loan, and in return, Royal Palm was

required, inter alia, by March 31, 2008 (the "Revised Maturity Date"), to either pay to Carbon II

the outstanding principal, interest and fees set forth in the Settlement Agreement, or cause the

sale of the Royal Palm Hotel, or refinance the Loan.  Otherwise, upon the passing of the Revised

Maturity Date, Carbon II would automatically replace Royal Palm as the managing member of

the Royal Palm Hotel Property, LLC ("Royal Palm Hotel"), 99.9% of Royal Palm's membership

interest in the Royal Palm Hotel would be automatically conveyed to Carbon II, and Carbon II

"shall be entitled to exercise all rights and remedies available to Lender under the Loan

Documents or at law, in equity or otherwise."

29.     In addition, Royal Palm agreed that if it defaulted on any portion of the

Settlement Agreement, a termination event ("Termination Event") would occur, in which case

the 99.9% membership interest, as described in the immediately preceding paragraph herein,

would increase to 100%.  In particular, as set forth in Section 3.3 of the Settlement Agreement, a

Termination Event shall occur where, inter alia, "[Royal Palm] shall fail to perform, observe or

comply with any covenant, agreement or term contained in this Agreement in any material

respect," and as set forth in Section 6.2.2 of the Settlement Agreement, in the event of a

Termination Event, the 99.9% membership interest shall increase to 100%.

30. The Settlement Agreement further provides that:

> If any legal action, arbitration or other proceeding is commenced
> to enforce or interpret any provision of this Agreement or any of
> the [Royal Palm] Deliveries, the prevailing party shall be entitled
> to an award of its actual fees and expenses, including, without
> limitation, attorneys' fees and disbursements (including fees on
> appeal), expert witness fees and disbursements.  The term
> 'prevailing party' shall include a party who receives substantially
> the relief desired by settlement, dismissal, summary judgment,
> judgment or otherwise.

**Royal Palm Breaches The Settlement Agreement**

31.    On March 25, 2008, counsel to Carbon II informed Mitchell by letter (the "Termination Event Letter") that, as a result of Royal Palm's failure to comply with the terms and conditions of the Settlement Agreement, a Termination Event had occurred.

32.    Specifically, as set forth in the Termination Event Letter, Royal Palm defaulted "on its obligation under Section 6.3.2 of the Settlement Agreement to enter into a replacement Cash Management Agreement with Wachovia Bank, National Association on terms acceptable to Carbon II"; "on its obligation under Section 8 of the Settlement Agreement approved by Carbon II"; and "under Sections 6.3.3 and 7.1 of the Settlement Agreement."

33.    In addition, Royal Palm failed to either pay to Carbon II the outstanding principal, interest and fees set forth in the Settlement Agreement, or cause the sale of the Royal Palm Hotel, or refinance the Loan by March 31, 2008, the Revised Maturity Date set forth in the Settlement Agreement.

**Royal Palm's Membership Interest and Managing
Member Responsibilities Were Automatically Conveyed To Carbon II**

34.    As a result of the foregoing breaches of the Settlement Agreement, Carbon II automatically replaced Royal Palm as the managing member of the Royal Palm Hotel, 99.9% of Royal Palm's membership in the Royal Palm Hotel was automatically conveyed to Carbon II, and, for the reasons set forth in the Termination Event Letter, Royal Palm's remaining 0.1% membership interest in the Royal Palm Hotel also was automatically conveyed to Carbon II.

**Mitchell and Royal Palm Refuse To Cooperate**

35.    Pursuant to Section 3.1 of the Settlement Agreement, Royal Palm agreed "to execute any documentation reasonably requested by [Carbon II] to confirm or evidence the Membership Conveyance," with the Membership Conveyance being defined as Carbon II becoming the managing member of the Royal Palm Hotel, as well as the automatic conveyance

to Carbon II of 99.9% of Royal Palm's membership interest in the Royal Palm Hotel.

36.    On April 1, 2008, Carbon II's counsel sent Mitchell a letter (the "Cooperation Request Letter") confirming that, due to Royal Palm's failure to either pay to Carbon II the outstanding principal, interest and fees set forth in the Settlement Agreement, or cause the sale of the Royal Palm Hotel, or refinance the Loan, Carbon II was now the managing member of the Royal Palm Hotel, and 99.9% of Royal Palm's membership interest in the Royal Palm Hotel had been automatically conveyed to Carbon II.  The Cooperation Request Letter also reserved Carbon II's right to "foreclose or otherwise seek a transfer of the remaining 0.1% membership interest" in the Royal Palm Hotel.

37.    In addition, the Cooperation Request Letter requested, pursuant to Section 3.1 of the Settlement Agreement, Mitchell's and Royal Palm's cooperation to document and confirm the transfer of the membership interest and management of Royal Palm, and further requested that Mitchell, on behalf of Royal Palm, execute an enclosed Assignment and Transfer of Membership Interest and cooperate in the execution of any other documents that Carbon II may request to confirm or evidence the transfer of membership interest and management.

38.    The Cooperation Request Letter also requested that Mitchell and Royal Palm "immediately confirm by close of business on April 2, 2008 that you will comply with these requests and with your obligations under the Settlement Agreement."

39.    On April 2, 2008, Mitchell's counsel responded to the Cooperation Request Letter by electronic mail (the "No Cooperation Response"), advising that Mitchell and Royal Palm would not honor the Settlement Agreement to which they had agreed and would not cooperate with Carbon II's reasonable request for documentation to evidence the Membership Conveyance, i.e., that Carbon II had become the managing member of the Royal Palm Hotel, and that Royal Palm's membership interest in the Royal Palm Hotel had automatically conveyed to Carbon II.

40.     The No Cooperation Response also indicated that Mitchell is continuing to hold Royal Palm out as the managing member of the Royal Palm Hotel, even though, pursuant to the terms of the Settlement Agreement, Carbon II is now the managing member of the Royal Palm Hotel, and was conveyed Royal Palm's membership interests in the Royal Palm Hotel.

41.     Mitchell's actions unquestionably violate the rights of Carbon II, as agreed to under the Settlement Agreement, and are interfering with Carbon II's efforts to prepare the Royal Palm Hotel for sale. If a declaratory judgment is not entered to prevent Mitchell from continuing to hold Royal Palm out as the managing member of the Royal Palm Hotel, Mitchell will continue to violate Carbon II's rights and will interfere with the sale process.

42.     In addition, to date, Mitchell has failed to pay the full amount due and owing to Carbon II, including without limitation all principal, interest, expenses, and costs, despite its clear obligations under the Note, Loan Agreement, Settlement Agreement and Guaranty to do so.

### COUNT I – DECLARATORY JUDGMENT

43.     Carbon II repeats and realleges paragraphs 1 through 42 of this Counterclaim as if fully set forth herein.

44.     The Settlement Agreement is a valid, binding and enforceable agreement.

45.     Mitchell and Royal Palm breached their obligations under the Settlement Agreement by refusing to execute documentation reasonably requested by Carbon II to confirm or evidence the conveyance of Royal Palm's membership interests in the Royal Palm Hotel to Carbon II and by continuing to hold Royal Palm out as the managing member of the Royal Palm Hotel.

46.     Carbon II has suffered, and will continue to suffer, harm that cannot adequately be compensated through monetary damages as a direct and proximate result of Mitchell's and Royal Palm's failure to cooperate, and the balance of the equities tips decidedly in Carbon II's

favor.

47.    Carbon II is entitled to an order adjudging, declaring, and decreeing that:

(a)    Carbon II validly removed Royal Palm as managing member of the Royal Palm Hotel in accordance with the terms of the Settlement Agreement;

(b)    Carbon II is the new managing member of the Royal Palm Hotel, as of April 1, 2008;

(c)    100% of Royal Palm's membership interest in the Royal Palm Hotel was automatically conveyed to Carbon II, as of April 1, 2008; and

(d)    Mitchell and Royal Palm breached the Settlement Agreement by failing to reasonably cooperate with Carbon II to confirm or evidence the conveyance of Royal Palm's membership interests in the Royal Palm Hotel to Carbon II and to ensure an orderly transfer of management responsibilities to Carbon II, the new managing member of the Royal Palm Hotel.

## COUNT II – BREACH OF CONTRACT

48.    Carbon II repeats and realleges paragraphs 1 through 47 of this counterclaim as if fully set forth herein.

49.    The Guaranty is a valid, binding and enforceable agreement executed by Mitchell and other individuals in favor of Carbon II.

50.    Carbon II performed all of its obligations under the Guaranty.

51.    Mitchell materially breached his obligations under the Guaranty by failing to pay sums due and owing to Carbon II under the terms of the Guaranty.

52.    Carbon II has been harmed and continues to be harmed by Mitchell's failure to pay sums due and owing to Carbon II under the terms of the Note, Loan Agreement, and Settlement Agreement.

53.    By reason of Mitchell's breach, Carbon II has been damaged in an amount to be

determined at trial, but at least $37,261,842.63, plus contractually agreed upon interest, costs, and expenses accruing since October 24, 2007.

## COUNT III – ATTORNEYS' FEES AND COSTS

54.    Carbon II repeats and realleges paragraphs 1 through 53 of this counterclaim as if fully set forth herein.

55.    Section 10.8 of the Settlement Agreement provides that:

> If any legal action, arbitration or other proceeding is commenced to enforce or interpret any provision of this Agreement or any of the [Royal Palm] Deliveries, the prevailing party shall be entitled to an award of its actual fees and expenses, including, without limitation, attorneys' fees and disbursements (including fees on appeal), expert witness fees and disbursements. The term 'prevailing party' shall include a party who receives substantially the relief desired by settlement, dismissal, summary judgment, judgment or otherwise.

56.    Likewise, the Guaranty provides that "[i]n the event that Guarantor should breach or fail to timely perform any provisions of this Guaranty, Guarantor shall, immediately upon written demand by Lender, pay Lender all costs and expenses (including court costs and attorneys' fees) incurred by Lender in the enforcement hereof or the preservation of Lender's rights hereunder."

57.    Accordingly, to the extent that Carbon II prevails on either Count I or Count II of this counterclaim, Mitchell is liable to Carbon II for actual attorneys' fees and any other expenses incurred by Carbon II in enforcing its rights under the Settlement Agreement and Guaranty.

## PRAYER FOR RELIEF

WHEREFORE, Carbon II respectfully requests that the Court enter judgment in its favor and against Mitchell as follows:

(1)    An order adjudging, declaring, and decreeing that:

(a)    Carbon II validly removed Royal Palm as managing member of the Royal Palm Hotel in accordance with the terms of the Settlement Agreement;

(b)    Carbon II is the new managing member of the Royal Palm Hotel;

(c)    100% of Royal Palm's membership interest in the Royal Palm Hotel was automatically conveyed to Carbon II; and

(d)    Mitchell breached the Settlement Agreement by failing to reasonably cooperate with Carbon II to confirm or evidence the conveyance of Royal Palm's membership interests in the Royal Palm Hotel to Carbon II and to ensure an orderly transfer of management responsibilities to Carbon II, the new managing member of the Royal Palm Hotel;

(2)    An award to Carbon II of damages in an amount no less than $37,261,842.63, plus contractually agreed upon interest, costs, and expenses accruing since October 24, 2007;

(3)    An award of all costs and disbursements, including actual attorneys' fees, that Carbon II has incurred in connection with its efforts to enforce Mitchell's obligations due to Carbon II under the Settlement Agreement and the Guaranty; and

(4)    Any such further and other relief at law or in equity that the Court deems just and proper.

Dated: New York, New York
      May 28, 2008

                                 SIDLEY AUSTIN LLP

                              By: _____
                                 Nicholas P. Crowell
                                 Isaac S. Greaney
                                 Alex J. Kaplan
                                 787 Seventh Avenue
                                 New York, New York 10019
                                 Tel:  (212) 839-5300

                                 *Attorneys for Defendant*
                                 *Carbon Capital II, Inc.*

<u>CERTIFICATE OF SERVICE</u>

I, Alex J. Kaplan, hereby certify that on the 28th day of May 2008, I caused the

foregoing Answer and Counterclaim to be filed and served via the Court's ECF system upon the

following counsel:

> H. Peter Haveles, Jr.
> Jonathan Francis
> Arnold & Porter LLP
> 399 Park Avenue
> New York, New York 10022

_____
Alex J. Kaplan