UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GUY T. MITCHELL and ROYAL PALM SENIOR
INVESTORS, LLC,

                                        Plaintiffs,

                        -against-                                          08 Civ. 4319 (JES)

CARBON CAPITAL II, INC.,

                                        Defendant.

## PRE-HEARING MEMORANDUM OF PLAINTIFF GUY T. MITCHELL

Plaintiff Guy T. Mitchell submits this pre-hearing memorandum in support of his request for a preliminary injunction restraining defendant Carbon Capital II, Inc. ("Carbon Capital") from exercising any remedies under the parties' Settlement Agreement, including the right to foreclose on the ownership interests of plaintiff Royal Palm Senior Investor, LLC ("Royal Palm") in the Royal Palm Hotel.

## STATEMENT OF FACTS

There is no dispute that Mitchell (in concert with his wife) is the ultimate majority owner of Royal Palm, and that Royal Palm is a single purpose entity whose sole asset is the Royal Palm Hotel. Carbon Capital has asserted that it is entitled to foreclose on its collateral and thereby sell Royal Palm, as well to assert all remedies against Mitchell. Therefore, the Court's determination of this motion will determine the fate of the Royal Palm Hotel.

On February 18, 2005, Carbon Capital and Royal Palm entered into a Loan Agreement and Mitchell executed a Guaranty Agreement. That loan is secured by the membership interest in Royal Palm. Under that Guaranty Agreement, Mitchell is a primary

obligor for Royal Palm's mezzanine debt, i.e., if Royal Palm defaults, Mitchell would be liable to Carbon Capital for the entire loan amount.

On October 24, 2007, Carbon Capital, Royal Palm and Mitchell (as Royal Palm's primary guarantor) entered into a Settlement Agreement, the terms of which were to be held in strict confidence by the parties. Carbon Capital agreed, inter alia, to make mortgage payments on behalf of the Royal Palm Hotel for the months of October 2007 through January 2008, but it never made these payments. For its part, Royal Palm agreed, inter alia, either to refinance the mezzanine loan or to sell the hotel by March 31, 2008. That event did not occur, but only because of Carbon Capital's breach of its duty of good faith.

In the Fall of 2007, Royal Palm and Hyatt Equities, L.L.C. ("Hyatt") entered into serious negotiations for Hyatt to acquire the Royal Palm Hotel. Hyatt and Royal Palm executed a Letter of Intent on November 15, 2007 and a Purchase and Sale Agreement on December 17, 2007, with the transaction to close on February 1, 2008. Starting in the Fall of 2007, Royal Palm and Mitchell kept Carbon Capital fully informed about the negotiations with Hyatt, as well as the terms of the Purchase and Sale Agreement.

Between January 24 and 28, 2008, Hyatt made a series of rapid-fire and peculiar requests for extensions of the February 1 closing date, culminating in a January 28 request to extend the closing date to April 1, 2008.[1] Since an April 1 closing date would not comply with the March 31 deadline and would cause Royal Palm to be in default, Mitchell had to reject Hyatt's request.

---

[1]   On January 28, the individual at Hyatt responsible for negotiating the agreement sent Mitchell first an e-mail and then a voice message, apologizing for Hyatt's actions, admitting that he was troubled by Hyatt's actions, disclaiming any responsibility for Hyatt's actions and attributing Hyatt's conduct to its Chairman, Tom Pritzker.

In letters dated March 25 and April 1, 2008, Carbon Capital asserted that Royal Palm breached the Settlement Agreement and was in default of the Loan Agreement. Thereafter, Royal Palm tried to conduct a nonjudicial foreclosure sale of Royal Palm.[2]

## ARGUMENT

Mitchell is entitled to a preliminary injunction maintaining the status quo because: (i) he will suffer irreparable harm if Carbon Capital is permitted to foreclose and sell Royal Palm and the Royal Palm Hotel; (ii) there is sufficient evidence to raise substantial questions about Carbon Capital's right to declare Royal Palm to be in breach of the Settlement Agreement; and (iii) the balance of hardships tips decidedly in Mitchell's favor. See Green Party of New York State v. New York State Board of Elections, 389 F.3d 411, 418 (2d Cir. 2004) (citation omitted).

### POINT I

### MITCHELL AND ROYAL PALM WILL BE IRREPARABLY INJURED IF CARBON CAPITAL IS NOT ENJOINED

Absent a preliminary injunction, Royal Palm and Mitchell stand to lose the Royal Palm Hotel, a hotel situated on a rare piece of Miami Beach oceanside property. Carbon Capital intends to conduct a foreclosure sale of ownership of Royal Palm and has already attempted to do so. Once ownership of the hotel is sold, there is no way to make up for its loss.

As real property, the Royal Palm Hotel is unique and its loss cannot be compensated by monetary damages alone. See Carada, LTD. v. McAuliffe, No. 92-CV-0465E(F), 1993 WL 117525 at *3 (W.D.N.Y. April 6, 1993) ("[T]his Court finds that property,

---

[2]    In addition, after the issuance of the temporary restraining order requiring Carbon Capital to maintain the status quo with respect to the Royal Palm Hotel, Carbon Capital began asserting rights under Section 3.5 of the Settlement Agreement by attempting to enforce a judgment against Mitchell and to foreclose against property belonging to him.

even commercial property, is sui generis.   Carada has expended time and money on the development of a particular property because of its location, peculiarities and potential.  To say that the loss of such can be adequately compensated for by money damages ignores the unique nature of an individual piece of real property."); see also Carpenter Technology Corp. v. City of Bridgeport, 180 F.3d 93, 97 (2d Cir. 1999) ("Because real property is at issue and because Carpenter cannot raise its claim for injunctive relief to prevent the taking of its property in the valuation proceeding, Carpenter has shown a threat of irreparable injury.") (applying Connecticut law); O'Hagan v. United States, 86 F.3d 776, 783 (8th Cir. 1996) ("[M]onetary relief fails to provide adequate compensation for an interest in real property, which by its very nature is considered unique."); Bean v. Independent American Savings Association, 838 F.2d 739, 743 (5th Cir. 1988) ("As to the second factor justifying preliminary relief, we agree with the district court that Bean faces irreparable injury should IASA foreclose before we have determined the merits of the appeal.  Because Bean stands to lose interests in real property, which we presume are unique, there is no adequate post-foreclosure remedy that could substitute for injunctive relief."); Sundance Land Corp. v. Community First Federal Savings & Loan Association, 840 F.2d 653, 661-62 (9th Cir. 1988) ("Since the property at issue is unique, [plaintiff's] legal remedy -- i.e., damages -- is inadequate.  [Plaintiff's] complaint therefore meets the equitable criteria for stating a cause of action for injunctive relief.") (footnote omitted); United Church of the Medical Center v. Medical Center Commission, 689 F.2d 693, 701 (7th Cir. 1982) ("It is settled beyond the need for citation, however, that a given piece of property is considered to be unique, and its loss is always an irreparable injury.").

New York state courts likewise hold that a party will be irreparably harmed if its interest in the real property is impaired.[3] See, e.g., In re Kiejliches, 292 A.D.2d 530, 532, 740 N.Y.S.2d 85, 87 (2d Dep't 2002) (because widow's right in specific real property was uncertain, "it was appropriate to restrain [her] from taking any actions which might potentially affect the value of the premises, or threaten the children's right to continued possession."); Delta Properties Inc. v. Fobare Enterprises Inc., 251 A.D.2d 960, 963, 674 N.Y.S.2d 817, 820 (3d Dep't 1998) (in order to protect its right of first refusal to purchase the land, plaintiff was entitled to preliminary injunction despite uncertainty of merits); Vincent v. Seaman, 152 A.D.2d 841, 844, 544 N.Y.S.2d 225, 227 (3d Dep't 1989) ("[I]n light of the unique nature of the realty and that the relief sought by plaintiff is specific performance of the contract, plaintiff would suffer irreparable harm if defendant was allowed to transfer, sell or encumber the realty during the pendency of the action.") (citation omitted); Seitzman v. Hudson River Associates, 126 A.D.2d 211, 214, 513 N.Y.S.2d 148, 150 (1st Dep't 1987) ("If plaintiffs are relegated to monetary damages by denial of injunctive relief, they will be prevented from having an office in the same building in which they live -- not a minor consideration in Manhattan.").

**POINT II**

**THERE ARE SERIOUS QUESTIONS REGARDING THE INVALIDITY OF THE ASSERTED DEFAULTS**

Carbon Capital asserts the right to exercise all of its remedies, including foreclosure, on the basis of five alleged breaches of the Settlement Agreement by Royal Palm. The factual record will not be complete until discovery is completed and the close of the evidentiary hearing. Yet, even at this juncture, Mitchell can establish sufficiently serious

---

[3]    The Settlement Agreement is governed by New York law.

questions about the merits to warrant an injunction preserving the status quo. See Reuters Ltd. v. United Press International, Inc., 903 F.2d 904, 908-09 (2d Cir. 1990).

**A.**    **Carbon Capital Waived the March 25 Alleged Defaults**

In its March 25, 2008 default letter, Carbon Capital claimed that that Royal Palm defaulted by breaching four terms of the Settlement Agreement, asserting that Royal Palm failed to: (i) enter into a new cash management agreement with Wachovia Bank as required by Section 6.3.2; (ii) obtain an opinion of New York counsel as required by Section 6.3.3; (iii) obtain opinions of Delaware Counsel as required by Section 7.1; and (iv) terminate and replace the existing management team at the hotel as required by Section 8.

In fact, Carbon Capital waived Royal Palm's performance of each of these obligations. See Nassau Trust Co. v. Montrose Concrete Products Corp., 56 N.Y.2d 175 (1982) (waiver is adequate defense in action to foreclose on mortgage); Massachusetts Mutual Life Insurance Co. v. Transgrow Realty Corp., 101 A.D.2d 770, 770-71, 475 N.Y.S.2d 418, 419 (1st Dep't 1984) (mortgagee waives terms and is estopped from asserting default when it does not enforce terms for substantial period of time or causes mortgagor to act in reliance on non-enforcement); N.Y. U.C.C. § 1-103(b).

The evidence will establish that, by its conduct as well as by the express terms of Section 6.5 of the Settlement Agreement, Carbon Capital waived each of the provisions under which it has asserted a default. Indeed, Carbon Capital had to have known, because of the express terms of Section 6.5, that the default alleged in its March 25 letter was contrived and that the letter was sent in bad faith.[4]

---

[4]    Section 6.5 provides that, before the end of October 2007, Carbon Capital had to either notify Royal Palm in writing that the Settlement Agreement would not come into force and effect because of the failure

Footnote continued on next page

**B.     Carbon Capital's Breach of the Duty of Good Faith Caused the Alleged April 1 Default**

In its April 1, 2008 letter, Carbon Capital also alleged that Royal Palm breached the Settlement Agreement by failing to sell the Royal Palm Hotel or refinance the loan by March 31, 2008.

Pursuant to a written contract, Royal Palm was poised to sell the hotel well before the March 31 deadline to Hyatt. Yet, on January 28, 2008, Royal Palm's ability to do so was destroyed when, under suspicious circumstances and after making two different extension requests during the preceding three days, Hyatt insisted without explanation that the closing date now be extended to April 1, 2008 and then terminated the Purchase Agreement. Mitchell will offer evidence demonstrating that Carbon Capital undermined the sale to Hyatt by directly or indirectly interfering with that agreement.[5]

Such interference constitutes a breach of the duty of good faith and fair dealing and estops Carbon Capital from asserting a default based on Royal Palm's failure to comply with the March 31 deadline. See ADC Orange, Inc. v. Coyote Acres, Inc., 7 N.Y.3d 484, 490 (2006) ("[A] party to a contract cannot rely on the failure of another to perform a condition precedent where he has frustrated or prevented the occurrence of the condition.") (citation omitted); A-1 General Contracting, Inc. v. River Market Commodities, Inc., 212 A.D.2d 897, 900, 622 N.Y.S.2d 378, 381 (3d Dep't 1995) ("It is the general rule, however, that a party to a contract

---

Footnote continued from previous page
to comply with the obligation set forth in Article 6, or waive compliance with all of those provisions. Carbon Capital did not terminate the Settlement Agreement.

[5]     As we advised the Court by letter dated June 9, 2008, on May 15, 2008, Mitchell issued subpoenas duces tecum on Hyatt. By Order dated June 6, 2008, the Northern District of Illinois granted Mitchell's motion to compel and ordered Hyatt to produce the requested documents by June 16. Although Mitchell has issued subpoenas ad testificandum to Hyatt, depositions cannot precede that production. Thus, in accordance with the application that the Court granted at the June 10 status conference, Mitchell will not be able to submit deposition designations and documentary evidence obtained from Hyatt until after the June 18th evidentiary hearing is held.

cannot rely on the failure of another to perform where he has frustrated or prevented that performance."); Gurino v. Gabrielli, 133 A.D.2d 136, 137, 578 N.Y.S.2d 671, 673 (2d Dep't 1987) (defendant equitably estopped from insisting on compliance with agreement's performance deadline "based on equitable principles of fair dealing."); see also Swick v. Heaney, 43 A.D.2d 645, 645, 349 N.Y.S.2d 444, 446 (3d Dep't 1973) ("Where one party demands strict performance as to time by another party, he must perform on his part all the conditions which are requisite in order to enable the other party to perform his part, and a failure on the part of the party demanding performance operates as a waiver of the time provisions of the contract.") (citation omitted).

As a result, Carbon Capital must be enjoined while Mitchell and Royal Palm are given a reasonable time to comply with the requirement to refinance the loan or sell the Royal Palm Hotel. See Taylor v. Goelet, 208 N.Y. 253, 258 (1913) ("By the waiver, time, as an essential element of the contract, has been removed therefrom, but it can be restored by a reasonable notice demanding performance.") (citations omitted); Schenectady Steel Co. v. Bruno Trimpoli General Construction Co., 43 A.D.2d 234, 237, 350 N.Y.S.2d 920, 923 (1st Dep't 1973) (by waiving right to timely performance under contract making time of the essence, respondent "effectively converted the contract into one under which performance within a reasonable time was all that was required.") (citations omitted), aff'd, 34 N.Y.2d 939 (1974); see also Doubleday & Co. v. Curtis, 763 F.2d 495, 502 n.9 (2d Cir. 1985) ("[I]t appears that under New York law the waiver of a 'time of the essence' provision in a contract ordinarily has no other result than to convert the contract into one in which performance must take place within a reasonable period of time.") (citing Schenectady Steel), cert. denied, 474 U.S. 912 (1985).

### C.     Carbon Capital Breached the Settlement Agreement

Carbon Capital is also not entitled to declare Royal Palm to be in breach of the Settlement Agreement because it has materially breached that agreement.

Section 3.6 of the Settlement Agreement required Carbon Capital to make the Royal Palm Hotel's monthly mortgage interest payments in October 2007, November 2007, December 2007 and January 2008. Carbon Capital failed to make these payments and has failed to cure its material breach. Indeed, the evidence will show that Carbon Capital refused to make these payments in an attempt to obtain leverage when negotiating an intercreditor agreement with the mortgagee of the Royal Palm Hotel.

Based on its bad faith performance of its obligations under the Settlement Agreement, Carbon Capital is estopped from asserting that Royal Palm has defaulted. See EMC Ambro Asset Management Ltd. v. Kaiser, 256 A.D.2d 161, 162, 681 N.Y.S.2d 539, 540 (1st Dep't 1998).

## POINT III

### THE BALANCE OF THE HARDSHIPS TIPS DECIDEDLY IN MITCHELL'S AND ROYAL PALM'S FAVOR

Without a preliminary injunction, Mitchell and Royal Palm face the irreparable loss of a profitable and unique piece of real property. Carbon Capital, on the other hand -- assuming arguendo that it is entitled to declare Royal Palm to be in breach of the Settlement Agreement -- stands only to suffer delay in its ability to exercise its remedies to recover the amount of money due to it under the mezzanine loan. Indeed, as the Court has been advised, both Royal Palm and Mitchell are working with all due haste to sell the Royal Palm Hotel in a rational and commercially reasonable manner so as to ensure that Carbon Capital is repaid in accordance with the terms of the Settlement Agreement.

Further, as the Court already held when denying Carbon Capital's request for a temporary restraining order in the prior action initiated by Carbon Capital, any hardship to Carbon Capital stemming from such delay is adequately compensated by monetary damages. April 17, 2008 Hearing Transcript at 7; see Warner-Lambert Co. v. Northside Development Corp., 86 F.3d 3, 8 (2d Cir. 1996).

A preliminary injunction will simply maintain the status quo while the parties' rights and duties under the Settlement Agreement are properly adjudicated. Thus, the equities strongly point to the need to grant injunctive relief.

## CONCLUSION

For the foregoing reasons, the motion for a preliminary injunction restraining Carbon Capital from exercising any remedies under the Settlement Agreement should be granted in its entirety.

Dated:    New York, New York
          June 11, 2008

ARNOLD & PORTER LLP

By: _____
     H. Peter Haveles, Jr.
     Jonathan N. Francis
     399 Park Avenue
     New York, NY  10022
     (212) 715-1000
     Peter.Haveles@aporter.com

Attorneys for Plaintiff