10959-0001/ryf

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x

ROYAL PALM SENIOR INVESTORS, LLC and GUY T. MITCHELL,

                                    Plaintiffs,

    -against-

CARBON CAPITAL II, INC.,

                                    Defendant.
-----------------------------------------------------------------------x

INVOLUNTARY PLAINTIFF'S NOTICE OF APPEARANCE, RESPONSE TO PLEADINGS, AND CLAIMS

08 CIV 4319 (JES)

        Royal Palm Senior Investors, LLC ("RPSI" or "Involuntary Plaintiff"), hereby appears by and through its attorneys McCabe & Mack LLP, and as and for its response to the Complaint, Answer and Counterclaim, and in its capacity as involuntary Plaintiff, respectfully alleges as follows:

### AS AND FOR A RESPONSE TO FIRST AMENDED COMPLAINT

1.    Involuntary Plaintiff denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraphs numbered "1", "3", "4", "5", "6", "7", "8", "9", "10", "11", "12", "13", "14", "15", "16", "17", "18", "19", "20", "21", "22", "23", "24", "25", "26", "27", "28", "29", "30", "31", "32", "33", "34", "35", "36", "37", "38", "39", "41" and "43" of the complaint.

### AS TO THE FIRST CLAIM FOR RELIEF

2.    Involuntary Plaintiff repeats, reiterates and realleges each and every denial to each and every allegation repeated in paragraph numbered "44" of the complaint.

3.    Involuntary Plaintiff denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraphs numbered "45", "46", "47", "48", "49", "50" and "51" of the complaint.

10959-0001/ryf

## AS TO THE SECOND CLAIM FOR RELIEF

4. Involuntary Plaintiff repeats, reiterates and realleges each and every denial to each and every allegation repeated in paragraph numbered "52" of the complaint.

5. Involuntary Plaintiff denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraphs numbered "57", "58", "59" and "60" of the complaint.

## AS AND FOR A RESPONSE TO DEFENDANT CARBON'S COUNTERCLAIM

6. Involuntary Plaintiff denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraphs numbered "1", "2", "3", "4", "5", "6", "8", "9", "10", "11", "12", "13", "14", 15", "16", "17", "18", "19", "20", "21", "22", "23", "24", "25", "26", "27", "28", "29", "30", "31", "32", "33", "34", "35", "36", "37", "38", "39", "40", "41", and "42" of the counterclaim.

7. Involuntary Plaintiff denies those allegations contained in paragraph numbered "7" of the counterclaim, and alleges that Albert M. Rosenblatt, as Receiver, has been placed in control of Royal Palm.

## AS TO COUNT I - DECLARATORY JUDGMENT

8. Involuntary Plaintiff repeats, reiterates and realleges each and every response to each and every allegation repeated in paragraph numbered "43" of the counterclaim.

9. Involuntary Plaintiff denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph numbered "44" of the counterclaim and leaves questions of law to the Court.

10. Involuntary Plaintiff denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraphs numbered "45" of the counterclaim.

10959-0001/ryf

### AS AND FOR A THIRD AFFIRMATIVE DEFENSE

19. Royal Palm Senior Investors, LLC may not be an involuntary Plaintiff, because it is amenable to the jurisdiction of this Court.

### AS AND FOR INVOLUNTARY PLAINTIFF'S CLAIMS AGAINST DEFENDANT CARBON

### NATURE OF INVOLUNTARY PLAINTIFF'S CLAIMS

20. Involuntary Plaintiff seeks a preliminary injunction pursuant to Section 9-625 of the New York Uniform Commercial Code ("U.C.C."), enjoining Carbon Capital II, Inc. ("Carbon") from flouting the clear procedures and rules provided by the U.C.C. and the New York Debtor and Creditor Law in carrying out an improper foreclosure sale of the Royal Palm Hotel, located at 1545 Collins Avenue, Miami Beach, Florida, 33139.

21. Carbon's egregious conduct in attempting to achieve in secret what the U.C.C. requires be accomplished pursuant to specified, open procedures has clouded the title to the Royal Palm Hotel, and the harm Carbon is causing, and will continue to cause, RPSI and others if it is not enjoined is immeasurable and cannot be compensated for monetarily.

22. In light of Carbon's underhanded conduct and the immeasurable harm it is causing RPSI, RPSI asserts claims seeking injunctive relief.

### PARTIES

23. Involuntary Plaintiff Royal Palm Senior Investors, LLC is a Delaware limited liability company now managed by the Honorable Albert M. Rosenblatt as a receiver pursuant to orders of the Supreme Court of New York.

24. Defendant Carbon Capital II, Inc., upon information and belief, is a Maryland corporation having its principal place of business at c/o BlackRock Financial Management, Inc., 40 East 52nd Street, New York, New York.

10959-0001/ryf

## JURISDICTION AND VENUE

25. This Court has jurisdiction over Involuntary Plaintiff's claims pursuant to 28 U.S.C. §§ 1332 and 1367.

26. Venue is proper in this District because Carbon resides in this District.

## FACTS

### The Appointment Of The Honorable Albert M. Rosenblatt As Receiver

27. Hotel 71 Mezz Lender, L.L.C. ("Hotel 71") previously commenced an action before the Supreme Court of New York styled *Hotel 71 Mezz Lender, L.L.C. v. Falor, et al.*, No. 601175/07 (Ramos, J.) (the "*Hotel 71* action").

28. On April 21, 2008, the Supreme Court of New York entered judgment in the amount of $52 million against the defendants in the *Hotel 71* action, including, among other people, Guy T. Mitchell ("Mitchell").

29. Despite being ordered to appear for their depositions, Mitchell, along with the other judgment debtors in the *Hotel 71* action, contemptuously refused to participate in discovery designed to locate their assets, and they ignored court orders requiring them to produce financial records.

30. Accordingly, after the entry of judgment, the New York Supreme Court, pursuant to orders dated April 2 and April 4, 2008 (the "Receivership Orders"), appointed former New York Court of Appeals Judge Albert M. Rosenblatt as receiver (the "Receiver" or "Receiver Rosenblatt"), pursuant to New York CPLR 5228, over all of the personal property of Mitchell (and the other judgment debtors), including all of the contractual rights and membership interests that they possessed in certain out-of-state limited liability companies and other entities.

10959-0001/ryf

31. Mitchell's uncertificated interests in the LLCs had previously been levied upon by the New York County Sheriff by serving the garnishees, the LLCs themselves, with a writ of attachment (which was entered by the New York Supreme Court on September 25, 2007) in New York State on October 23, 2007, pursuant to New York CPLR 311-a(a) (the "Attachment Order").

32. The New York Supreme Court directed Receiver Rosenblatt to take these assets into his possession and manage them to maximize their value in order to satisfy Hotel 71's $52 million judgment in the *Hotel 71* action. Various of the *Hotel 71* action judgment debtor defendants appealed the New York Supreme Court's Receivership Orders and its Order confirming the attachment. Oral argument in the Appellate Division, First Department was heard on June 10, 2008, and that court's decision is pending.

33. Of most relevance to this action, the assets Receiver Rosenblatt has been directed to maximize the value of include "the ownership and/or management interests of . . . Guy Mitchell in," among other entities, "Royal Palm Junior Investors, LLC, Royal Palm Investors, LLC, Royal Palm Senior Investors, LLC, Royal Palm Hotel Property, LLC, [and] Royal Palm Manager, LLC."

34. Receiver Rosenblatt assumed his authority as Receiver on May 7, 2008, when he filed a bond with the Clerk of New York County.

35. On May 19, 2008, Receiver Rosenblatt and Mitchell entered into a stipulation in connection with the *Hotel 71* action providing, among other things, that "Mitchell acknowledges and agrees that, pursuant to the Receivership Orders, the Receiver has sole control over the management and disposition of Mitchell's interests in the Receivership Property [defined to include RPSI, RPHP, and the Collateral] and any assets owned or controlled by the Receivership Property, including but not limited to the Royal Palm Hotel."

10959-0001/ryf

### Carbon's Loan to Royal Palm Senior Investors, LLC

36. On February 18, 2005, RPSI executed a promissory note made payable to Carbon evidencing a mezzanine loan Carbon made to RPSI in the initial principal amount of $24,545,813.00 (the "Loan"). RPSI's purpose in obtaining the Loan was to, among other things, further develop for sale the Royal Palm Hotel.

37. On October 24, 2007 – one day after Mitchell was served in New York with the Attachment Order in connection with the *Hotel 71* action, which, among other things, applied to "any interest any of the Defendants[, including Mitchell,] may have in" RPSI and RPHP – Carbon and Mitchell entered into the Settlement Agreement at issue here.

38. Mitchell signed the Settlement Agreement as Manager on behalf of RPSI and as an individual guarantor.

39. As a result of an alleged default under this Settlement Agreement, Carbon now contends – without the benefit of any legal process, a foreclosure sale, or notice to any third party – that 100% of RPSI's interest in RPHP, the entity that owns the Royal Palm Hotel, "automatically" transferred to Carbon.

40. On March 25 and April 1, 2008, Carbon sent RPSI letters notifying RPSI that Carbon had deemed RPSI in default of the Settlement Agreement.

41. By virtue of sending these letters pursuant to the Settlement Agreement, without any further legal process, foreclosure sale, or notice to any other party, Carbon now contends that it holds 100% of RPSI's interest in the Royal Palm Hotel.

42. Incredibly, although U.C.C. Section 9-620 provides the only method whereby a secured creditor may accept collateral in satisfaction of a debt, and despite the fact that neither the Settlement Agreement nor Carbon's default notification letters purported to state whether

10959-0001/ryf

Carbon was accepting the Collateral in full or partial satisfaction of RPSI's debt as required by the U.C.C., Carbon maintains that the Collateral transfer occurred "automatically."

43.   Even more incredibly, Carbon appears to contend that its debt remains intact despite its supposed taking of all of the interests in RPSI.

44.   The U.C.C. also requires that the debtor actually accept – after default – the secured party's proposal to accept the collateral in satisfaction of the debt, and the debtor's acceptance must be authenticated after the default. Carbon failed to make such a proposal and Mitchell and RPSI did not go along with Carbon's taking.

45.   Indeed, Carbon admitted to the New York Supreme Court that RPSI expressly refused to accept Carbon's purported acceptance of the Collateral. Carbon explains in the Complaint it filed with the New York Supreme Court, on April 2, 2008, in what Carbon labels the "No Cooperation Response," that RPSI's counsel responded to Carbon's April 1 letter "advising that Mitchell and [RPSI] would not honor the Settlement Agreement to which they had agreed and would not cooperate" with Carbon's request for documentation evidencing "that Carbon II had become the managing member of the Royal Palm Hotel," or that RPSI's "membership interest in the Royal Palm Hotel had automatically conveyed to Carbon II."

46.   Carbon further acknowledged in its New York State court pleading "that Mitchell is continuing to hold [RPSI] out as the managing member of the Royal Palm Hotel."

47.   As a matter of law, the Settlement Agreement plainly did not effect a valid transfer of title to the Royal Palm Hotel and RPSI's interests in RPHP to Carbon. The purported transfer by its express terms secured payment of the same debt that RPSI remains obligated to pay. Any such transfer to an existing creditor without fair consideration – or, as here, no consideration whatsoever – is simply void under common law.

10959-0001/ryf

48. Nor can the Settlement Agreement be validated as a remedy under Article 9 of the U.C.C. First, Carbon agrees that it made literally no attempt to comply with any U.C.C. rules governing "disposition" of collateral, stating that such noncompliance is somehow of no consequence. Second, even if the Settlement Agreement is tested "post hoc" for validity under the U.C.C., a review of the statutory requirements for a retention by a secured party in partial or total satisfaction of the debt demonstrate the complete absence of any of the steps which the U.C.C. mandates be followed.

49. Most notably, despite the purported transfer of property worth millions more than is owed to Carbon, the debt owed to Carbon was not paid down, in whole or in part, which precludes any contention by Carbon that it somehow retained its collateral in satisfaction of the "Obligations" secured thereby as required under Sections 9-620 and 9-621 of the U.C.C.

50. In short, Carbon failed to comply with Section 9-620 of the U.C.C. – it did not make a proposal to accept collateral in satisfaction of its debt and it did not secure any agreement after sending the March 25 and April 1 default notices.

51. Further, Carbon itself materially breached the Settlement Agreement it now purports to rely on to substantiate its claim that it now holds 100% of the Collateral.

52. Specifically, under the Settlement Agreement, Carbon agreed to pay the Royal Palm Hotel's monthly mortgage payments for the months of October, November and December 2007 and the month of January 2008.

53. Carbon, however, failed to make any of these payments, thereby breaching its obligations under the Settlement Agreement.

54. This material breach forecloses Carbon's ability to seek any benefits under the Settlement Agreement.

10959-0001/ryf

**Carbon's Simultaneous Inconsistent Positions**

55.     Carbon simultaneously takes two entirely inconsistent positions with respect to the Collateral.

56.     On the one hand, Carbon improperly declares itself the holder of 100% of the Collateral through an allegedly "automatic" and secret process that occurred wholly outside of the U.C.C.

57.     At the same time, Carbon declares that it is entitled to foreclose on the Collateral as collateral and sell it at a U.C.C. foreclosure sale.

58.     Importantly, the Collateral at issue here is the 100% membership interest that RPSI has in Royal Palm Hotel Property, LLC, which is the LLC that holds the deed to the physical Royal Palm Hotel (the Royal Palm Hotel itself is not the Collateral).

59.     Meanwhile, a real estate broker, Eastdil Secured, LLC, has been attempting to sell the Royal Palm Hotel, previously at Mitchell's and RPSI's direction and now at Receiver Rosenblatt's direction.

60.     As evidenced by a recent article in The Deal stating that "The [Royal Palm Hotel] is on the block, although it isn't clear who owns it" and further that "exactly who owns the Royal Palm is in dispute" because an "affiliate of BlackRock Inc. [i.e., Carbon], which holds a loan for the property it says is in default, wants control," but "Mitchell has resisted" and "[l]awsuits have flown," Carbon's inconsistent positions and improper behavior have confused the marketplace and clouded the proper disposition of the Collateral under the U.C.C.

61.     Upon information and belief, Carbon is an affiliate of BlackRock, Inc.

10959-0001/ryf

62.   If Carbon is not enjoined from continuing to assert these contradictory positions to the world – positions which lack any merit under New York law – RPSI will be irreparably harmed.

**Mitchell Violated The New York Supreme Court's
Attachment Order By Entering Into The Settlement Agreement**

63.   Mitchell, as an individual defendant in the *Hotel 71* action, appeared before the New York Supreme Court in connection with the attachment hearing in that action on October 23, 2007 (the "October 23 Hearing").

64.   At the October 23 Hearing the New York Supreme Court directed the Sheriff to serve Mitchell right there in the courtroom with the Attachment Order, thereby formally placing Mitchell in his capacity as Manager of RPSI on notice that RPSI's interests in RPHP had been levied upon.

65.   Incredibly, the very next day, Mitchell, as Manager of RPSI, caused RPSI to improperly enter into the Settlement Agreement with Carbon, in violation of the New York Supreme Court's Attachment Order.

66.   This violation of the New York Supreme Court's Attachment Order is even more astounding in light of the exchange Justice Ramos had with the parties to the *Hotel 71* action at the October 23 Hearing. Mitchell's counsel at the October 23 Hearing, Steven Berger, Esq., characterized Mitchell's then-potential deal with Carbon as a "refinancing," at one point asking Hotel 71's counsel, "Do we have it understood, nothing that has happened today, in terms of serving the TRO, in any way affects Mr. Mitchell's ability to act as the managing member of Royal Palm [meaning RPSI] in the refinancing [of] the project. Are we understood as to that?"

10959-0001/ryf

67.    Moments later, Justice Ramos stated, "As long as his interest stays the same, the underlying refinancing should not affect it at all, as long as there's no diminution of the equity."

**RPSI Will Suffer Irreparable Harm In The Absence Of Injunctive Relief**

68.    Carbon's conduct has been egregious. Having clouded the title to the Collateral, Carbon is attempting to achieve in secret what the U.C.C. requires be accomplished through an open process.

69.    The harm that Carbon's actions are causing, and will continue to cause, RPSI and others is immeasurable and cannot be compensated for monetarily. Accordingly, an injunction is appropriate here.

70.    Of course, there is no risk of prejudice to Carbon in allowing Receiver Rosenblatt to conduct a commercially reasonable sale because, in following the New York Supreme Court's instructions, he will be seeking to maximize the value of RPSI's interests which will benefit all of Mitchell's creditors, including Carbon and, indeed, Mitchell himself.

## FIRST CLAIM

(Noncompliance with U.C.C. § 9-620 and § 9-621 –
No Satisfaction, No Acceptance, and No Notice)

71.    Section 9-620 of the U.C.C. expressly provides that "a secured party may accept collateral in full or partial satisfaction of the obligation it secures *only if*: (1) the debtor consents to the acceptance under subsection (c)." N.Y. U.C.C. § 9-620(a)(1) (emphasis added).

72.    As the statute expressly states, Section 9-620's procedure is the *only* lawful procedure whereby a secured party may accept collateral in satisfaction of a debt.

73.    Here, there is no satisfaction, whether partial or total, documented nor intended by the Settlement Agreement.

10959-0001/ryf

74. The Settlement Agreement does not provide for satisfaction of RPSI's debt in that it nowhere states that Carbon is accepting the Collateral in satisfaction of RPSI's debt, much less how much of RPSI's debt is satisfied by the Collateral (*i.e.*, whether Carbon is accepting the Collateral in full or partial satisfaction of RPSI's debt) as required by U.C.C. Section 9-620(a) and (c).

75. Neither the Settlement Agreement nor the letters of March 25 and April 1, 2008, that Carbon sent to RPSI notifying RPSI that Carbon had deemed RPSI to be in default of the Settlement Agreement endeavor to set forth *any* terms under which Carbon was willing to accept the Collateral in satisfaction of RPSI's debt.

76. Moreover, nowhere does Carbon state how much of RPSI's debt Carbon's purported taking of the Collateral satisfies; it is entirely unclear whether Carbon intends to accept the Collateral in full or partial satisfaction of RPSI's debt.

77. RPSI not only failed to accept the Settlement Agreement as an authenticated record after default of Carbon's acceptance of the Collateral in either partial or full satisfaction of its debt to Carbon as required by Section 9-620(c), but Carbon has admitted in its own pleadings that RPSI *expressly refused* to accept the Settlement Agreement as such a record.

78. Carbon failed to notify the requisite parties pursuant to Sections 9-620(d) and Section 9-621.

79. Carbon was aware of Hotel 71's interest because Hotel 71 served a document demand on Carbon on January 9, 2008, and Carbon appeared at a March 26, 2008, hearing held in the *Hotel 71* action.

80. Carbon literally made no effort to inform Hotel 71 of its intention to snatch the Collateral from RPSI.

10959-0001/ryf

81. Indeed, Carbon actively sought to conceal its efforts by including a confidentiality provision in its Settlement Agreement with RPSI that barred the parties from disclosing, except in certain circumstances, "the terms or conditions of this Agreement or any document executed in connection herewith." Carbon's utter failure to notify any of the parties entitled to notification of its intentions is a clear violation of Sections 9-620(d) and 9-621.

82. Involuntary Plaintiff is suffering and will continue to suffer harm as a result of Carbon's noncompliance with U.C.C. Sections 9-620 and 9-621.

## SECOND CLAIM

### (Noncompliance with U.C.C. § 9-624 – Improper Waiver of Right of Redemption)

83. Involuntary Plaintiff repeats and realleges the allegations contained in paragraphs 20 through 31 as if fully set forth herein.

84. A debtor may lawfully waive its equitable right of redemption under U.C.C. § 9-624 "*only*" by an agreement "entered into and authenticated *after* default." N.Y. U.C.C. § 9-624(c) (emphasis added).

85. RPSI *expressly refused* to consent to waive its right of redemption after Carbon alleged that it defaulted under the Settlement Agreement, and such consent is necessary under Section 9-620 to work an effective transfer.

86. Involuntary Plaintiff is suffering and will continue to suffer harm as a result of Carbon's noncompliance with U.C.C. Section 9-624.

## THIRD CLAIM

### (Violation of Debtor and Creditor Law § 273-a – Fraudulent Conveyance)

87. Plaintiff repeats and realleges the allegations contained in paragraphs 20 through 35 as if fully set forth herein.

10959-0001/ryf

88. Under Section 273-a of the Debtor and Creditor Law, "[e]very conveyance made without fair consideration when the person making it is a defendant in an action for money damages or a judgment in such an action has been docketed against him, is fraudulent as to the plaintiff in that action without regard to the actual intent of the defendant if, after final judgment for the plaintiff, the defendant fails to satisfy the judgment."

89. Carbon and Plaintiff Guy T. Mitchell ("Mitchell"), acting as Manager of RPSI, engaged in a fraudulent conveyance because: (a) there was no fair consideration; (b) Mitchell was a defendant in the *Hotel 71* action at the time; and (c) Mitchell (and the other *Hotel 71* action judgment debtors) have paid *none* of the outstanding $52 million judgment against them.

90. Under these facts, Section 273-a creates an *irrebutable presumption* that Mitchell's purported transfer of RPSI's interests to Carbon was fraudulent as to other present creditors of RPSI, including Hotel 71.

91. Mitchell was a defendant in the *Hotel 71* action at the time the Settlement Agreement was entered into on October 24, 2007, and at all times thereafter to the present he has continued to be a defendant in the *Hotel 71* action.

92. Neither Mitchell nor any of the other *Hotel 71* judgment debtors have paid any portion of the outstanding $52 million judgment against them.

93. The aborted sale of the Royal Palm Hotel to Hyatt was for $200 million which would yield $70-80 million above the first mortgage.

94. There was no fair consideration because Carbon's debt is less than $40 million, yet it claims to be entitled to all of the proceeds from the sale of the Royal Palm Hotel after the first mortgage is paid, which would yield an unfair windfall some $25 million in excess of the debt Carbon is owed.

10959-0001/ryf

95.  Moreover, Carbon does not claim that its taking of the Collateral satisfies any portion of the debt it is owed.

96.  Involuntary Plaintiff is suffering and will continue to suffer irreparable harm as a result of Carbon's violation of Debtor and Creditor Law Section 273-a.

## FOURTH CLAIM

(Violation of Debtor and Creditor Law § 276 – Fraudulent Conveyance)

97.  Involuntary Plaintiff repeats and realleges the allegations contained in paragraphs 20 through 45 as if fully set forth herein.

98.  Under Debtor and Creditor Law Section 276, "[e]very conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors."

99.  Under these facts, Mitchell's purported transfer of RPSI's interests was fraudulent and made with actual intent to hinder, delay, or defraud Hotel 71.

100.  The Settlement Agreement with Carbon – purporting to allow Carbon to take the entirety of Mitchell's interest in the Royal Palm upon a default – was signed *the day after* Mitchell was served with this Court's Attachment Order.

101.  The Settlement Agreement violated this Court's Attachment Order, and the timing of the Settlement Agreement indicates that it was not entered into in good faith.

102.  Plaintiff is suffering and will continue to suffer irreparable as a result of Carbon's violation of Debtor and Creditor Law Section 276.

10959-0001/ryf

WHEREFORE, Involuntary Plaintiff Royal Palm Senior Investors, LLC respectfully requests that the Court grant the relief requested in Plaintiff Guy T. Mitchell's complaint, deny the relief requested by the Defendant's counterclaim, permanently enjoin the Defendant from carrying out an improper sale of the Royal Palm Hotel, grant costs and disbursements to Involuntary Plaintiff, and for such and other relief as this Court deems just and proper.

DATED:    Poughkeepsie, New York
          June 27, 2008

                                      McCABE & MACK LLP

By: _____
      RICHARD R. DuVALL (8967)
      Attorneys for Involuntary Plaintiff
      Royal Palm Senior Investors, LLC
      63 Washington Street
      P.O. Box 509
      Poughkeepsie, NY 12602-0509
      Tel: (845) 486-6800

TO:    H. Peter Haveles, Jr., Esq.
       Arnold & Porter LLP
       399 Park Avenue
       New York, NY 10022-4690

       Isaac Greaney, Esq.
       Nicholas P. Crowell, Esq.
       Alex J. Kaplan, Esq.
       Sidley Austin LLP
       787 Seventh Avenue
       New York, NY 10019