UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

GUY T. MITCHELL and ROYAL PALM SENIOR
INVESTORS, LLC,

                            Plaintiffs,

              - against -

CARBON CAPITAL II, INC.,

                        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Index No. 08 Civ. 4319 (JES)


# DEFENDANT'S MEMORANDUM OF LAW IN
## SUPPORT OF ITS MOTION TO DISMISS
### PLAINTIFF ROYAL PALM SENIOR INVESTORS, LLC'S CLAIMS

SIDLEY AUSTIN LLP

Nicholas P. Crowell
Isaac S. Greaney
Alex J. Kaplan
787 Seventh Avenue
New York, New York 10019
(212) 839-5300

*Attorneys for Defendant*
*Carbon Capital II, Inc.*

## **TABLE OF CONTENTS**

**Page(s)**

TABLE OF AUTHORITIES ........................................................................................ ii

PRELIMINARY STATEMENT .................................................................................. 1

FACTUAL STATEMENT .......................................................................................... 3

    A. The Parties and Key Non-Parties ................................................................... 3

    B. The Mezzanine Loan Agreement ................................................................... 3

    C. RPSI and Mitchell Failed To Perform Under The Loan Agreements ............ 4

    D. The Settlement Agreement .............................................................................. 4

    E. RPSI Breached The Settlement Agreement and Failed To
       Repay The Loan Agreement ............................................................................ 5

    F. RPSI and Mitchell Failed To Cooperate ........................................................ 6

ARGUMENT ............................................................................................................... 8

    I. RPSI'S UCC CLAIMS (CLAIMS 1 AND 2) MUST BE DISMISSED .......... 9

        A. Carbon II Did Not Accept The Collateral In Full
          Or Partial Satisfaction Of RPSI's Debt ................................................... 10

        B. Carbon II's Possession Of The Collateral Pursuant
          To The Settlement Agreement Is Expressly
          Permitted By The UCC ............................................................................ 12

        C. RPSI's Partial Waiver Of Its Right Of Redemption Is Valid ................ 13

    II. RPSI'S FRAUDULENT CONVEYANCE CLAIMS (CLAIMS 3 AND 4)
       MUST BE DISMISSED ................................................................................. 14

CONCLUSION .......................................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

<span style="font-variant:small-caps">Cases</span>

AppliedTheory Corp. v. Palladin Overseas Fund, Ltd.,
  330 B.R. 362 (Bankr. S.D.N.Y. 2005) ..................................................................16

Condit v. Dunne,
  No. 06 Civ. 13126 (PKL), 2008 WL 2676306 (S.D.N.Y. July 8, 2008) ...................................8

Coxall v. Clover Commercial Corp.,
  4 Misc. 3d 654, 781 N.Y.S.2d 567 (Civ. Ct. 2004) ...............................................12

Diana Allen Life Ins. Trust v. BP P.L.C.,
  No. 06 Civ. 14209 (PAC), 2008 WL 878190 (S.D.N.Y. Mar. 31, 2008) ..................................8

Dixie Yarns, Inc. v. Forman,
  906 F. Supp. 929 (S.D.N.Y. 1995) ..................................................................17

Fischer v. Sadov Realty Corp.,
  34 A.D.3d 632, 829 N.Y.S.2d 108 (2d Dep't 2006) ...............................................14

Furlong v. Storch,
  132 A.D.2d 866, 518 N.Y.S.2d 216 (3d Dep't 1987) ..............................................14

Gasperini v. Ctr. for Humanities, Inc.,
  518 U.S. 415 (1996) .................................................................................8

Goldfine v. Sichenzia,
  118 F. Supp. 2d 392 (S.D.N.Y. 2000) ................................................................9

In re M. Silverman Laces, Inc.,
  No. 01-6209, 2002 WL 31412465 (Bankr. S.D.N.Y. Oct. 24, 2002) .....................................16

Long Island Trust Co. v. Porta Aluminum, Inc.,
  49 A.D.2d 579, 370 N.Y.S.2d 166 (2d Dep't 1975) ...............................................12

Marine Midland Bank v. Murkoff,
  120 A.D.2d 122, 508 N.Y.S.2d 17 (2d Dep't 1986) ...............................................17

Rothman v. Gregor,
  220 F.3d 81 (2d Cir. 2000) ...........................................................................3

Tal v. Malekan,
  305 A.D.2d 281, 760 N.Y.S.2d 36 (1st Dep't 2003) ..............................................15

**STATUTES**

28 U.S.C. § 1332 ...................................................................................................8

F.R.C.P. 12(b)(6) ..................................................................................................8

N.Y. U.C.C. § 9-102 ...........................................................................................13

N.Y. U.C.C. § 9-207 ...........................................................................................13

N.Y. U.C.C. § 9-607(a) .......................................................................................12

N.Y. U.C.C. § 9-609(a) .......................................................................................12

N.Y. U.C.C. § 9-620 et seq. ............................................................................9, 10

N.Y. U.C.C. § 9-624 ...........................................................................................13

## PRELIMINARY STATEMENT

In asserting claims against Defendant Carbon Capital II, Inc. ("Carbon II"),

Plaintiff Royal Palm Senior Investors, LLC ("RPSI") merely seeks to confuse the Court and

distract it from the real issue in this case: RPSI's and Mitchell's refusal to comply with their

obligations under the Settlement Agreement that RPSI executed with Carbon II. As set forth in

detail below, RPSI's claims contravene the most basic precepts of New York law and, therefore,

should be dismissed with costs and attorney's fees awarded to Carbon II.[1]

RPSI currently owes Carbon II approximately $40 million dollars. RPSI's debt to

Carbon II is secured by 100% of the membership interests in Royal Palm Hotel Property, LLC

(the "Collateral"), which is the owner of the Royal Palm Hotel (the "Hotel"). RPSI defaulted on

its obligation to repay the loan upon maturity in March 2007. After months of negotiation and

one day before a scheduled sale of the Collateral, pursuant to the New York Uniform

Commercial Code ("UCC"), Carbon II agreed to forbear from exercising its remedies, and, in

exchange, RPSI agreed to repay its debt by March 31, 2008. In consideration for Carbon II's

agreement to forbear, and after its March 2007 default, RPSI also agreed to convey the Collateral

to Carbon II if RPSI failed to repay the loan, or refinance the loan, or sell the Hotel. On March

31, 2008, RPSI did not repay the loan, or refinance the loan, or sell the Hotel. Since then,

Carbon II has attempted for over three months to enforce its bargained for rights under the

---

[1]      Moreover, in RPSI's Notice of Appearance, Response to Pleadings, and Claims ("RPSI's Complaint" or "RPSI's Compl."), RPSI denies "knowledge or information sufficient to form a belief as to the truth of the allegations" for many allegations contained in the pleadings of the other parties, but then inconsistently makes the very same allegations in its Complaint. For example, while RPSI denies knowledge and information sufficient to form a belief as to the truth of paragraphs 10-11 of Carbon II's Counterclaim (that RPSI executed a promissory note made payable to Carbon II in the initial principal amount of $24,545,813.00, etc.) (see RPSI's Compl. ¶ 6), RPSI then makes the exact same allegation in paragraph 36 of its Complaint. Quite clearly, RPSI failed to answer Carbon II's Counterclaim in good faith, and therefore, has bucked its obligations under the Federal Rules of Civil Procedure.

Settlement Agreement in the face of a series of baseless legal challenges by Guy Mitchell and RPSI in this Court, and in separate actions before Justice Ramos, by one of Mitchell's judgment creditors (Hotel 71 Mezz Lender ("Hotel 71")) and the Receiver appointed by Justice Ramos.

With its baseless counterclaims, RPSI seeks to obstruct the financial arrangements that it <u>voluntarily</u> <u>bargained</u> <u>for</u> <u>and</u> <u>entered</u> <u>into</u> with Carbon II. Indeed, RPSI challenges its own agreement (the Settlement Agreement) without ever alleging that the agreement was entered into without authority. Moreover, the clear aim of RPSI's counterclaims is to seek relief not for RPSI, but for one of Mitchell's judgment creditors, Hotel 71, an entity that is not a party to this action. For the following reasons, the counterclaims fail as a matter of law.

<u>First</u>, RPSI claims that Carbon II violated the UCC when it took possession of the Collateral pursuant to the Settlement Agreement. RPSI's UCC claims are legally deficient. Through the allegations of its counterclaims, RPSI erects the straw-man argument that Carbon II accepted the Collateral in full or partial satisfaction of RPSI's debt, but did not do so in accordance with the UCC. But Carbon II never accepted the Collateral in satisfaction of the debt. Rather, Carbon II merely took possession of the Collateral following RPSI's default. That it did so by way of an agreed upon mechanism under a contract (<u>i.e.</u>, the Settlement Agreement) is of no consequence.

<u>Second</u>, RPSI claims that <u>its</u> <u>own</u> <u>transfer</u> of the Collateral constitutes a fraudulent conveyance under New York law. RPSI's claims to this effect are equally without merit, as RPSI fails properly to plead each element of these alleged claims. Critically, RPSI has not alleged, as it must, that (i) RPSI was a defendant in an action for money damages at the time of the conveyance of the Collateral, or that (ii) a final judgment has been rendered against RPSI that remains unsatisfied. These deficiencies are fatal to RPSI's claims, and require dismissal.

2

## FACTUAL BACKGROUND[2]

### A.  The Parties and Key Non-Parties

Carbon II is a corporation duly organized and existing under the laws of the State of Maryland which, from time to time, loans money to entities to acquire, develop, redevelop, and sell real property.  (Def.'s Countercl. ¶¶ 5, 8.)

RPSI is a limited liability company organized and existing under the laws of the State of Delaware, having its principal place of business in the State of Florida.  (Pl.'s First Am. Compl. ¶ 2).  RPSI owns the membership interests in non-party Royal Palm Hotel Property, LLC, a limited liability company that owns the Hotel.

Mitchell is an individual residing in Florida.  (Def.'s Countercl. ¶ 6, Pl.'s First Am. Compl. ¶ 3.)  In a separate action pending before the New York State Supreme Court, the Court appointed non-party Albert M. Rosenblatt as receiver to manage Mitchell's personal property interests, including Mitchell's purported interests in RPSI. (RPSI's Compl. ¶ 30.)

### B.  The Mezzanine Loan Agreement

On or about February 18, 2005, RPSI entered into a Mezzanine Loan Agreement with Carbon II (the "Loan Agreement"), evidenced by a promissory note (the "Note") executed in favor of Carbon II, pursuant to which Carbon II loaned RPSI approximately $24.5 million (the "Loan").  (Def.'s Countercl. ¶ 9, Pl.'s First Am. Compl. ¶¶ 8-9, RPSI's Compl. ¶ 36.)  The Maturity Date of the Loan was March 9, 2007.  (Def.'s Countercl. ¶ 9.)  The purpose of the Loan was to, among other things, further develop for sale the Hotel.  (Def.'s Countercl. ¶ 11, RPSI's

---

[2]    This Factual Background is drawn from the Complaint, documents referenced therein and other matters of which the Court may take judicial notice on this motion to dismiss.  See, e.g., Rothman v. Gregor, 220 F.3d 81, 91-92 (2d Cir. 2000).  Included in this Factual Background is information taken from the exhibits attached to the Declaration of Nicholas P. Crowell, dated July 18, 2008.

Compl. ¶ 36.)  Pursuant to the Note and Loan Agreement, RPSI agreed to pay the entire principal

amount of the Loan on March 9, 2007, and to make interest payments at the applicable interest

rate, beginning on February 18, 2005.  (Def.'s Countercl. ¶ 12.)

        In connection with the Note and the Loan Agreement, Mitchell executed the

Guaranty, dated as of February 18, 2005, by which Mitchell personally guaranteed full payment

to Carbon II of all obligations of RPSI under the terms of the Note and Loan Agreement (Def.'s

Countercl. ¶ 13, Pl.'s First Am. Compl. ¶ 10.)

### C.  RPSI and Mitchell Failed to Perform Under the Loan Agreements

        When the Loan matured on March 9, 2007, RPSI failed to pay the full amount of

the Loan owed to Carbon II, including contractually agreed upon interest and expenses, and an

event of default occurred.  (Def.'s Countercl. ¶ 19.)  The Loan Agreement defines an event of

default as occurring if, among other things, "any portion of the Debt is not paid when due," with

"Debt" being defined as the outstanding principal amount, interest and fees due to Carbon II in

respect of the Loan under the Note and the Loan Agreement.  (Def.'s Countercl. ¶ 20.)  On June

11, 2007, Carbon II sought payment from Mitchell pursuant to the Guaranty Agreement, (Def.'s

Countercl. ¶ 22), but Mitchell failed to pay Carbon II.

### D.  The Settlement Agreement

        After RPSI and Mitchell defaulted on their obligations, Carbon II and Mitchell, on

behalf of RPSI, negotiated a forbearance agreement.  (Def.'s Countercl. ¶ 21.)  On October 24,

2007, Carbon II and RPSI, and certain guarantors, including Mitchell, entered into a forbearance

agreement (the "Settlement Agreement").  (Def.'s Countercl. ¶ 23, Pl.'s First Am. Compl. ¶ 12.)

Under the Settlement Agreement, RPSI expressly acknowledged that it was in default under the

Loan Agreement by failing to timely repay all outstanding amounts due to Carbon II.  (Def.'s

Countercl. ¶ 25.)  In exchange for Carbon II's agreement to forbear from exercising its rights

against RPSI, RPSI promised that, by March 31, 2008, it would pay to Carbon II the amount set

forth in the Settlement Agreement, or refinance the Loan, or cause the sale of the Hotel.  (Def.'s

Countercl. ¶ 28.)  If RPSI failed to perform, RPSI agreed that 99.9% of the membership interests

would automatically convey to Carbon II (the "Membership Conveyance").  (Id.)

In addition, RPSI agreed that if it defaulted on any portion of the Settlement

Agreement, a termination event ("Termination Event") would occur, in which case the 99.9%

membership interest, as described in the immediately preceding paragraph herein, would

increase to 100%.  In particular, as set forth in Section 3.3 of the Settlement Agreement, a

Termination Event shall occur where, inter alia, "[RPSI] shall fail to perform, observe or comply

with any covenant, agreement or term contained in this Agreement in any material respect," and

as set forth in Section 6.2.2 of the Settlement Agreement, in the event of a Termination Event,

the 99.9% membership interest shall increase to 100%.  (Def.'s Countercl. ¶ 29.)

Pursuant to Section 3.1 of the Settlement Agreement, RPSI agreed "to execute

any documentation reasonably requested by [Carbon II] to confirm or evidence the Membership

Conveyance," with the Membership Conveyance being defined as Carbon II becoming the

managing member of the Hotel, as well as the automatic conveyance to Carbon II of RPSI's

membership interest in the Hotel.  (Def.'s Countercl. ¶ 35.)

### E.  RPSI Breached the Settlement Agreement and Failed to Repay the Loan Agreement

On March 25, 2008, counsel to Carbon II informed Mitchell by letter (the

"Termination Event Letter") that, as a result of RPSI's failure to comply with the terms and

conditions of the Settlement Agreement, a Termination Event had occurred. (Def.'s Countercl. ¶ 31, Pl.'s First Am. Compl. ¶ 22.) Specifically, as set forth in the Termination Event Letter, RPSI defaulted "on its obligation under Section 6.3.2 of the Settlement Agreement to enter into a replacement Cash Management Agreement with Wachovia Bank, National Association on terms acceptable to Carbon II"; "on its obligation under Section 8 of the Settlement Agreement approved by Carbon II"; and under Section 7.1 of the Settlement Agreement. (Def.'s Countercl. ¶ 32, Pl.'s First Am. Compl. ¶ 22.) In addition, RPSI failed to either pay to Carbon II the outstanding principal, interest and fees set forth in the Settlement Agreement, or cause the sale of the Hotel, or refinance the Loan by March 31, 2008, the Revised Maturity Date set forth in the Settlement Agreement. (Def.'s Countercl. ¶ 33.)

As a result of the foregoing breaches of the Settlement Agreement, and as the parties agreed in the Settlement Agreement, Carbon II automatically replaced RPSI as the managing member of the Hotel, 99.9% of RPSI's membership interest in the Hotel was automatically conveyed to Carbon II, and, due to the defaults set forth in the Termination Event Letter, RPSI's remaining 0.1% membership interest in the Hotel also was automatically conveyed to Carbon II. (Def.'s Countercl. ¶ 34.)

### F.  RPSI and Mitchell Failed to Cooperate

On April 1, 2008, Carbon II's counsel sent Mitchell a letter (the "Cooperation Request Letter") confirming that, due to RPSI's failure to either pay to Carbon II the outstanding principal, interest and fees set forth in the Settlement Agreement, or cause the sale of the Hotel, or refinance the Loan, Carbon II was now the managing member of the Hotel, and 99.9% of RPSI's membership interest in the Hotel had been automatically conveyed to Carbon II. (Def.'s Countercl. ¶ 36, Pl.'s First Am. Compl. ¶ 25.) The Cooperation Request Letter also reserved

6

Carbon II's right to "foreclose or otherwise seek a transfer of the remaining 0.1% membership interest" in the Hotel. (Def.'s Countercl. ¶ 36.)

In addition, the Cooperation Request Letter requested, pursuant to section 3.1 of the Settlement Agreement, RPSI's and Mitchell's cooperation to document and confirm the transfer of the membership interest and management of the Hotel, and further requested that Mitchell, on behalf of RPSI, execute an enclosed Assignment and Transfer of Membership Interest and cooperate in the execution of any other documents that Carbon II may request to confirm or evidence the transfer of membership interest and management. (Def.'s Countercl. ¶ 37.) The Cooperation Request Letter also requested that RPSI and Mitchell "immediately confirm by close of business on April 2, 2008 that you will comply with these requests and with your obligations under the Settlement Agreement." (Def.'s Countercl. ¶ 38.)

On April 2, 2008, Mitchell's counsel responded to the Cooperation Request Letter by electronic mail (the "No Cooperation Response"), advising that RPSI and Mitchell would not honor the Settlement Agreement to which they had agreed and would not cooperate with Carbon II's reasonable request for documentation to evidence the Membership Conveyance, i.e., that Carbon II had become the managing member of the Hotel, and that RPSI's membership interest in the Hotel had automatically conveyed to Carbon II. (Def.'s Countercl. ¶ 39.) The No Cooperation Response also indicated that Mitchell is continuing to hold RPSI out as the managing member of the Hotel, even though, pursuant to the terms of the Settlement Agreement, Carbon II is now the managing member of the Hotel, and was conveyed RPSI's membership interests in the Hotel. (Def.'s Countercl. ¶ 40.)

RPSI's actions, through Mitchell, unquestionably violate the rights of Carbon II, as agreed to under the Settlement Agreement, and are interfering with Carbon II's efforts to

prepare the Hotel for sale.  If a declaratory judgment is not entered to prevent Mitchell from

continuing to hold RPSI out as the managing member of the Hotel, Mitchell will continue to

violate Carbon II's rights and will interfere with the sale process.  (Def.'s Countercl. ¶ 41.)  In

addition, to date, RPSI and Mitchell have failed to pay the full amount due and owing to Carbon

II, including without limitation all principal, interest, expenses, and costs, despite their clear

obligations under the Note, Loan Agreement, Settlement Agreement and Guaranty to do so

(Def.'s Countercl. ¶ 42.)

## ARGUMENT[3]

RPSI's counterclaims must be dismissed pursuant to Rule 12(b)(6) of the Federal

Rules of Civil Procedure.  "When determining a motion to dismiss for failure to state a claim

upon which relief may be granted, '[t]he court's function . . . is not to weigh the evidence that

might be presented at trial but merely to determine whether the complaint itself is legally

sufficient.'"  Condit v. Dunne, No. 06 Civ. 13126 (PKL), 2008 WL 2676306, at *2 (S.D.N.Y.

July 8, 2008) (citation omitted).  In deciding a motion to dismiss, the court "'must accept as true

all of the factual allegations contained in the complaint,' and construe the complaint in the light

most favorable to the plaintiff."  Diana Allen Life Ins. Trust v. BP P.L.C., No. 06 Civ. 14209

(PAC), 2008 WL 878190, at *3 (S.D.N.Y. Mar. 31, 2008) (citing Bell Atl. Corp. v. Twombly,

127 S. Ct. 1955, 1975 (2007)).  However, "mere 'formulaic recitation of the elements of a cause

of action' will not suffice; instead, '[f]actual allegations must be enough to raise a right to relief

above the speculative level.'"  Id. (citing Twombly, 127 S. Ct. at 1965).  Further, plaintiff must

allege "'plausible grounds to infer' that its claims rise 'above the speculative level.'"  Id. (citing

---

[3]        Because this action is before the Court on the basis of diversity jurisdiction pursuant to
28 U.S.C. § 1332, the substantive law of New York state applies to the claims discussed herein.
See Gasperini v. Ctr. for Humanities, Inc., 518 U.S. 415, 427 (1996) ("Under the Erie doctrine,
federal courts sitting in diversity apply state substantive law and federal procedural law.")

Twombly, 127 S. Ct. at 1965). RPSI's Complaint fails to allege any claim here.

## I.  RPSI'S UCC CLAIMS (CLAIMS 1 AND 2) MUST BE DISMISSED

In Claims 1 and 2 of the Complaint, RPSI alleges that Carbon II violated the UCC by taking possession of 100% of the Collateral pursuant to the express terms of the Settlement Agreement. RPSI's purported UCC claims are unsupported by facts that fit within any cognizable legal theory, and therefore, the UCC claims must be dismissed. See Goldfine v. Sichenzia, 118 F. Supp. 2d 392, 396 (S.D.N.Y. 2000) ("Of course, where the Complaint fails to properly set forth any element of a claim, the Court must dismiss the complaint.")

RPSI's claim that Carbon II obtained possession of the Collateral in violation of the UCC fails as a matter of law. First, the procedural requirements of UCC section 9-620 et seq. only apply where the secured party accepts collateral in full or partial satisfaction of an obligation. The Complaint contains no allegations that trigger UCC section 9-620 et seq. Indeed, the Complaint does not allege that Carbon II accepted the Collateral in either full or partial satisfaction of RPSI's debt, and in fact, Carbon II did no such thing. The Settlement Agreement, which the parties entered into after RPSI's default, is an agreement whereby Carbon II promised to forbear from exercising the remedies available under the Loan Agreement in exchange for RPSI's partial waiver of its right of redemption. (See Def.'s Countercl. ¶ 28.) As RPSI concedes, the Settlement Agreement makes no mention of acceptance of the Collateral in full or partial satisfaction of RPSI's debt, nor did the parties intend such a result. (RPSI's Compl. ¶¶ 74-75.) Accordingly, the procedural requirements of section 9-620 et seq. are wholly inapplicable. Second, Carbon II's possession of the Collateral pursuant to the Settlement Agreement is expressly permitted under the UCC. Indeed, Carbon II took possession of the Collateral only after RPSI's default of the Loan Agreement in an effort to prepare for the

9

ultimate disposition of the Collateral, and it did so in strict accordance with the UCC.  <u>Finally</u>, RPSI's partial waiver of its right of redemption was valid because it occurred after its default on the Loan and was exchanged for Carbon II's agreement to forbear from exercising its remedies and rights under the Loan Agreement.

### A. Carbon II Did Not Accept the Collateral In Full or Partial Satisfaction of RPSI's Debt

RPSI's claim that Carbon II violated the UCC rests on the false premise that Carbon II's mere possession of the Collateral pursuant to the Settlement Agreement is tantamount to the collection of the amount owed under the Loan Agreement and the acceptance of the Collateral in full or partial satisfaction of RPSI's debt.  To the contrary, constructive strict foreclosures of the sort apparently contemplated by RPSI are expressly disclaimed in the Official Comments to section 9-620, which state:

> [a] debtor's voluntary surrender of collateral to a secured party and the secured party's acceptance of possession of the collateral does not, of itself, necessarily raise an implication that the secured party intends or is proposing to accept the collateral in satisfaction of the secured obligation.

N.Y. UCC § 9-620, cmt. 5.  Thus, while RPSI agreed to voluntarily relinquish possession of the Collateral (Def.'s Countercl. ¶¶ 28-29), Carbon II's acceptance of possession alone cannot constitute an acceptance of the Collateral in satisfaction of RPSI's debt obligation.

Moreover, even a cursory review of the terms of the Settlement Agreement reveals that Carbon II did not accept the Collateral in full or partial satisfaction of RPSI's debt, nor did the parties contemplate such a result.  Of critical importance among the various requirements for effectuating a strict foreclosure under UCC section 9-620 are (i) the debtor's agreement "to the terms of the acceptance in a record authenticated after default;" and (ii) the

secured party's consent to the acceptance in an authenticated record.  N.Y. U.C.C. § 9-620.

Importantly, and as RPSI itself points out, the Settlement Agreement lacks any mention of an

acceptance by Carbon II of the Collateral in satisfaction of RPSI's debt.  (RPSI's Compl. ¶ 74.)

Nor does the Settlement Agreement include an agreement by RPSI to the terms of the ethereal

acceptance upon which RPSI bases its claims.  On the contrary, the Settlement Agreement

expressly contemplates the continuation of RPSI's indebtedness.  (See Def.'s Countercl. ¶ 27.)

For example, section 2.1 of the Settlement Agreement, entitled "Borrower's

Indebtedness," states "Borrower acknowledges that interest continues to accrue on the principal

amount of the Debt after the date hereof, as provided in the Loan Documents."  Likewise, section

3.3 of the Settlement Agreement, entitled "Interest Rate Going Forward," sets forth the

appropriate interest rate on RPSI's debt commencing on the date of execution of the Settlement

Agreement.  Additionally, section 3.4.1 of the Settlement Agreement, entitled "Waivers by

Lender and Treatment of Certain Events of Default," states that Carbon II "waives, on a going

forward basis, the covenant to pay all amounts . . . other than the obligation to repay the Debt in

its entirety on the Revised Maturity Date."  (emphasis supplied.)  Clearly, these valid and

binding provisions are inconsistent with RPSI's allegation that Carbon II attempted to effectuate

a strict foreclosure.  What is more, RPSI concedes that the Settlement Agreement does not

include any acceptance in satisfaction of RPSI's debt -- indeed, RPSI acknowledges that the

Settlement Agreement did not "endeavor to set forth any terms under which Carbon II was

willing to accept the Collateral in satisfaction of RPSI's debt."  (RPSI's Compl. ¶ 75.)

Notwithstanding RPSI's conclusory allegations to the contrary, the Settlement

Agreement did not constitute an acceptance of collateral in full or partial satisfaction of RPSI's

debt, nor was it a veiled attempt to do so.  Rather, Carbon II and RPSI entered into a forbearance

11

agreement, the primary purpose of which was to provide RPSI with additional time to repay its

debt to Carbon II. As such, neither section 9-620 of the UCC nor its associated provisions have

any bearing on the propriety of Carbon II's conduct. Consequently, RPSI's claim that Carbon II

violated the UCC by taking possession of the Collateral following RPSI's default fails as a

matter of law.

### B. Carbon II's Possession of the Collateral Pursuant to the Settlement Agreement is Expressly Permitted by the UCC

The legal deficiency of RPSI's claim is further evidenced by the fact that the UCC

expressly permits a secured creditor to take possession of collateral upon the debtor's default.

See, e.g., N.Y. U.C.C. § 9-609(a); see also Long Island Trust Co. v. Porta Aluminum, Inc., 49

A.D.2d 579, 580, 370 N.Y.S.2d 166, 168 (2d Dep't 1975) ("Unless otherwise agreed, a secured

party has, on default, the right to take possession of the collateral."); Coxall v. Clover

Commercial Corp., 4 Misc. 3d 654, 657, 781 N.Y.S.2d 567, 571 (Civ. Ct. 2004) (holding that a

secured creditor is permitted to take possession of collateral upon default pursuant to Article 9).

Indeed, section 9-609 of the UCC – aptly titled "Secured Party's Right to Take Possession After

Default" – expressly states, in relevant part, that "[a]fter default, a secured party . . . may take

possession of the collateral." N.Y. U.C.C. § 9-609(a). Section 9-609(b) of the UCC further

provides that "a secured party may proceed under subsection (a) . . . without judicial process, if it

proceeds without breach of the peace." N.Y. U.C.C. § 9-609(b). In addition, section 9-607 of

the UCC permits a secured party to collect on the collateral after an event of default. N.Y.

U.C.C. § 9-607(a).

Significantly, upon the occurrence of RPSI's default on the Loan Agreement,

Carbon II could have immediately taken possession of the Collateral pursuant to section 9-609 of

the UCC or exercised the rights and remedies provided for in the Loan Agreement. See N.Y.

12

U.C.C. § 9-609(a). Instead, Carbon II and RPSI entered into the Settlement Agreement, whereby Carbon II agreed to temporarily forbear from exercising its rights and remedies under the Loan Agreement and RPSI agreed to transfer possession of the Collateral if it failed to repay its debt to Carbon II, sell the Hotel, or refinance the Loan on or before March 31, 2008. (Def.'s Countercl. ¶ 28.) RPSI did not take any of these actions by March 31, 2008. Consequently, pursuant to the express terms of the Settlement Agreement, and in accordance with section 9-609 of the UCC, Carbon II immediately took possession of the Collateral.[4] While Article 9 of the UCC imposes further obligations on secured creditors upon taking possession of collateral pursuant to section 9-609, see, e.g., N.Y. U.C.C. § 9-207 (imposing duty of care), RPSI has not, and indeed cannot, allege that Carbon II's conduct to date has violated any of these various provisions.

### C. RPSI's Partial Waiver of Its Right of Redemption Is Valid

RPSI's claim that it did not partially waive its right to redeem surplus equity because it did not consent, as required under the UCC, is equally specious. Section 9-624(c) of the UCC provides that "a debtor . . . may waive the right to redeem collateral . . . only by an agreement to that effect entered into and authenticated after default." N.Y. U.C.C. § 9-624. Under Article 9 of the UCC, an agreement is authenticated if it is signed or executed "with a present intent to . . . adopt or accept a record." N.Y. U.C.C. § 9-102. That is exactly what happened here. Under the terms of the Settlement Agreement, and in exchange for Carbon II's valid consideration of its promise to forbear from exercising its rights and remedies under the Loan Agreement, RPSI partially waived its right of redemption. (See Def.'s Countercl. ¶¶ 28-29.) As noted previously, there can be no doubt that RPSI defaulted on the Loan as of March 9,

---

[4]    It is important to note that this transfer of possession of the Collateral to Carbon II also permitted Carbon II to exercise its collection and enforcement rights in accordance with section 9-607 of the UCC directly against RPHP, which issued the membership interests that constitute the Collateral. See N.Y. U.C.C. § 9-607.

2007.  Thereafter, on October 24, 2007, RPSI and Carbon II entered into the Settlement

Agreement, signed on behalf of RPSI by Guy Mitchell.  (RPSI's Compl. ¶¶ 37-38.)  Thus,

RPSI's partial waiver unequivocally occurred <u>after</u> the default.

## II. RPSI'S FRAUDULENT CONVEYANCE CLAIMS (CLAIMS 3 AND 4) MUST BE DISMISSED

      In Claims 3 and 4, RPSI alleges that the transfer of possession of the Collateral

under the terms of the Settlement Agreement constituted a fraudulent conveyance under sections

273-a and 276 of New York's Debtor and Creditor Law ("DCL").  These claims are legally

deficient, and must also be dismissed.  As an initial matter, RPSI's claim that the transfer of

possession constituted a fraudulent conveyance is bizarre, considering that RPSI is essentially

claiming that <u>its</u> <u>own</u> <u>transfer</u> <u>was</u> <u>fraudulent</u>.  In addition, RPSI has not alleged facts that satisfy

the requisite elements of a claim for fraudulent conveyance under either sections 273-a or 276 of

the DCL.  Consequently, RPSI's fraudulent conveyance claims must be dismissed.

      RPSI has failed to meet its burden of pleading facts which, if proven true,

establish that the transfer of the Collateral pursuant to the Settlement Agreement constitutes a

fraudulent conveyance under either section 273-a or section 276 of the DCL.  In order to state a

cause of action for fraudulent conveyance under section 273-a, RPSI has the burden of pleading

three elements: (1) at the time of the conveyance, the conveyor was a defendant in an action for

money damages or a judgment in such action had been docketed against it; (2) a final judgment

has been rendered against the conveyor that remains unsatisfied; and (3) the conveyance was

made without fair consideration.  <u>See</u> <u>Fischer v. Sadov Realty Corp.</u>, 34 A.D.3d 632, 632, 829

N.Y.S.2d 108, 110 (2d Dep't 2006); <u>see</u> <u>also</u> <u>Furlong v. Storch</u>, 132 A.D.2d 866, 867-68, 518

N.Y.S.2d 216, 218 (3d Dep't 1987).  RPSI has failed to allege facts establishing any of these

three elements.

First, RPSI has not alleged that it was a defendant in an action for money damages at the time of the conveyance. RPSI's allegation that there was a "fraudulent conveyance because . . . Mitchell was a defendant in the *Hotel 71* action" at the time the Settlement Agreement was executed misses the point. (RPSI's Compl. ¶ 89.) It was not Mitchell, but RPSI, that conveyed the membership interests. And, at the time the Settlement Agreement was executed, RPSI was not a defendant in the Hotel 71 action (nor, for that matter, has RPSI ever been a defendant in the Hotel 71 action). RPSI has therefore failed to allege – and indeed cannot allege in good faith – that it was a defendant in an action for money damages or that a judgment in such action had been docketed against it.

Second, RPSI has not alleged that a final judgment has been rendered against it that remains unsatisfied. Instead, RPSI alleges that "[n]either Mitchell nor any of the other *Hotel 71* judgment debtors have paid any portion of the outstanding $52 million judgment against them." (RPSI's Compl. ¶ 92.) Again, as with the first element, this allegation has nothing to do with RPSI -- the analysis under section 273-a requires RPSI to demonstrate that it (not Mitchell) has failed to satisfy a judgment. There can be no dispute that RPSI was not a defendant in the Hotel 71 action, and is not liable for the judgment in that case. Accordingly, RPSI fails to allege facts in support of the second requisite element of a claim under section 273-a.

Third, even if RPSI were able to establish that it was somehow a defendant in the Hotel 71 action, or had conveyed anything within the meaning of the DCL, RPSI's conclusory allegation that the conveyance was without adequate consideration is insufficient to defeat the instant motion. Tal v. Malekan, 305 A.D.2d 281, 281, 760 N.Y.S.2d 36, 37 (1st Dep't 2003) ("[A]llegations consisting of bare legal conclusions, as well as factual claims inherently

incredible or flatly contradicted by documentary evidence are not entitled to such consideration.") (quotation omitted). RPSI's allegation ignores the valuable rights that Carbon II gave up by entering into the Settlement Agreement. Rather than foreclose, Carbon II agreed to forbear from immediately pursuing its remedies, and agreed to extend RPSI's obligations under the Loan Agreement pursuant to the terms of the Settlement Agreement. As courts have recognized, a "lender's decision not to demand payment, but rather to extend the loans" can constitute fair consideration under the DCL. AppliedTheory Corp. v. Palladin Overseas Fund, Ltd. (In re AppliedTheory Corp.), 330 B.R. 362, 364 (Bankr. S.D.N.Y. 2005); see also In re M. Silverman Laces, Inc., No. 01-6209, 2002 WL 31412465, at *6 (Bankr. S.D.N.Y. Oct. 24, 2002) (coming to same conclusion under analogous provisions in the Bankruptcy Code). This is because the "decision not to demand payment" provides a borrower "an opportunity to avoid default, to facilitate its rehabilitation, and to avoid bankruptcy." AppliedTheory, 330 B.R. at 364 (quoting Silverman, 2002 WL 31412465, at *17).

        In the present case, faced with the prospect of losing its membership interests, and control over the disposition of those interests, RPSI entered into the Settlement Agreement. Carbon II's "decision not to demand payment" therefore provided RPSI with the very "opportunity to avoid default," to facilitate rehabilitation, and to stave off foreclosure that courts have recognized as fair consideration for purposes of the DCL. See, e.g., id.

        RPSI's allegations also fail to take into account the fact that it conveyed nothing to Carbon II that it had not already pledged as part of the original Loan. Under the terms of the Pledge Agreement, Carbon II was granted a "continuing security interest in, to and under the [m]embership [i]nterest," i.e., the Collateral. As of March 9, 2007, when an event of default was declared under the Loan Agreement, Carbon II was entitled to, among other things, foreclose on

the Collateral.  (<u>See</u> Def.'s Countercl. ¶ 19.)  The Settlement Agreement simply provided the mechanics for Carbon II to take possession of the Collateral in order to ensure that its eventual disposition proceeded in an orderly and expeditious manner.

   RPSI's claim under section 276 is equally untenable.  RPSI has failed to allege facts that satisfy the requirements of a fraudulent transfer claim under section 276.  Under this section, a creditor seeking to set aside a conveyance has the burden of establishing, by clear and convincing evidence, an intent to hinder, delay, or defraud either present or future creditors.  <u>See</u> <u>Marine Midland Bank v. Murkoff</u>, 120 A.D.2d 122, 125, 508 N.Y.S.2d 17, 20 (2d Dep't 1986).  In its Complaint, RPSI alleges that "[t]he Settlement Agreement violated this Court's Attachment Order, and the timing of the Settlement Agreement indicates that it was not entered into in good faith." (RPSI's Compl. ¶ 101.)  RPSI fails to elaborate on any of these allegations.  As an initial matter, this Court has not entered any Attachment Order, and presumably, this allegation was haphazardly lifted from non-party Hotel 71's filings with Justice Ramos (as was the rest of RPSI's Complaint).  Moreover, courts have made clear that, under New York law, the burden is on RPSI to establish that "one or more of the following factors is lacking [in order to show an absence of good faith]:  (1) an honest belief in the propriety of the activities in question; (2) no intent to take unconscionable advantage of others; and (3) no intent to, or knowledge of the fact that the activities in question will hinder, delay or defraud others."  <u>Dixie Yarns, Inc. v. Forman</u>, 906 F. Supp. 929, 937 (S.D.N.Y. 1995) (<u>quoting</u> <u>Southern Indus., Inc. v. Jeremias</u>, 66 A.D.2d 178, 411 N.Y.S.2d 945 (2d Dep't 1978)).  RPSI's bald assertions regarding the timing of the Settlement Agreement are simply insufficient to show that there was any absence of good faith here.  And indeed, despite RPSI's baseless challenge of its own agreement, RPSI nowhere

alleges that the agreement was entered into without authority.[5]

## CONCLUSION

For all of the foregoing reasons, Carbon II respectfully requests that this Court dismiss RPSI's claims in their entirety with prejudice, award reasonable costs and attorney's fees to Carbon II, and grant such other and further relief that this Court may deem just and proper.


Dated: New York, New York
      July 18, 2008

Respectfully submitted,

SIDLEY AUSTIN LLP

By: _____
     Nicholas P. Crowell
     Isaac S. Greaney
     Alex J. Kaplan
     787 Seventh Avenue
     New York, New York  10019
     (212) 839-5300

*Attorneys for Defendant Carbon Capital II, Inc.*

---

[5]     Even if RPSI managed to state a claim, there still would be no basis for the relief sought, i.e., preventing Carbon II from foreclosing on the Collateral.  If the Settlement Agreement is somehow void, the parties' rights and obligations return to the status quo under the Loan Agreement, and due to RPSI's unquestionable defaults (namely, its failure to repay the Loan and all other outstanding proceeds at maturity), Carbon II has the right under the Loan Agreement to foreclose on the Collateral.